# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-4144

SIPHATHISO MABASA, MAUREEN MABASA, and
SINOBUKHOSI MABASA,

*Petitioners,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of Orders of the
Board of Immigration Appeals.
Nos. A95-399-173, A95-399-172 & A95-399-171

ARGUED SEPTEMBER 13, 2005—DECIDED MARCH 15, 2006
AMENDED JULY 26, 2006

Before BAUER, MANION, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Siphathiso Mabasa, a teacher from
Zimbabwe, applied for asylum on behalf of himself and his
wife and daughter, Maureen and Sinobukhosi Mabasa. The
Mabasas request review of a Board of Immigration Appeals
("BIA") order affirming the denial of their application for
asylum, withholding of removal, and protection under the
United Nations Convention Against Torture ("CAT"). For
the reasons set forth in this opinion, we affirm the decision
of the BIA.

## I.  Background

The Mabasas are natives and citizens of Zimbabwe. Siphathiso Mabasa entered the United States as a nonimmigrant visitor on December 28, 1999. His wife and daughter, Maureen and Sinobukhosi, entered as nonimmigrant visitors approximately three months later, on March 9, 2000.

In Zimbabwe, Mr. Mabasa was a schoolteacher and a member of the Zimbabwe Teachers Association and the Zimbabwe Congress of Trade Unions ("ZCTU"). An offshoot of the ZCTU eventually became the Movement for Democratic Change ("MDC"), which is now the minority political party in Zimbabwe.

Mr. Mabasa became an active member of the MDC in September of 1999 by assisting in fund-raising and recruiting for the organization. He said that his MDC activities made him fearful of staying in Zimbabwe. In November of 1999 he was verbally threatened by the Youth Chairman of the Zimbabwe African National Union-Patriot Front (the ruling party in Zimbabwe) and at that point felt he needed to flee the country. In late December of 1999, over a month after he had been threatened and three months after joining the MDC, he left the country to come to the United States. In 2001, he reactivated his MDC membership in the United States and started to recruit new members and fund-raise on behalf of a local Indiana chapter of the MDC. Mr. Mabasa confirmed that one-third of Zimbabwe's population are members of the MDC and that the MDC controls 57 of the 120 seats in Zimbabwe's parliament.

According to the Mabasas' affidavits, after Mr. Mabasa left Zimbabwe, ruling party supporters came to their home and to Mrs. Mabasa's work to find out about her husband's activities and location. Mrs. Mabasa stated that during the visits she was pushed around and threatened with various forms of violence against her daughter and herself.

Further, Mrs. Mabasa claimed she began receiving threatening and harassing phone calls inquiring into her husband's whereabouts. Mrs. Mabasa feared for her life and left the Mabasas' home to stay elsewhere. Finally, she and Sinobukhosi left Zimbabwe to join her husband in the United States on March 9, 2000.

Mr. Mabasa's brother, Gibson Ncube Mabasa, explained at the asylum hearing that he had received threats to his brother's life back in Zimbabwe. After visiting the Mabasas in the United States, Gibson returned home to Zimbabwe on October 24, 2001. A few days after Gibson returned to Zimbabwe he said he was visited by men from the Central Intelligence Organization ("CIO") who questioned him about his brother, Mr. Mabasa. The CIO officers told Gibson that they would kill his brother when he returned to Zimbabwe because of his MDC membership. The threat's timing coincided with Mr. Mabasa's renewed fund-raising and recruiting efforts on behalf of the MDC in Indiana. On November 20, 2001, Gibson sent a letter to the Mabasas, warning them that government authorities were looking for Mr. Mabasa and that they wanted him "dead or alive."

The Mabasas explained that, in the past, members of their family who were involved in the MDC were tortured or killed by the ruling party. Mrs. Mabasa's father was killed by government supporters on December 18, 2000, and her uncle, a commander in the military, was tortured by President Robert Mugabe's government in the mid-1980's and died of his injuries.

The Mabasas filed for asylum, withholding of removal, and for protection under the CAT. The filing of their application was not within the one-year statutory deadline, as required by 8 C.F.R. § 1158(a)(2)(B) to be considered timely. The Mabasas do not contest the tardiness of their motion. They do argue, however, that there are three factors that make their situation one of changed circum-

stances, which can excuse the late filing. *See* 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4(a)(4). First, the Mabasas cite Mr. Mabasa's renewed efforts on behalf of the MDC, which began three months before he sought asylum. Second, the Mabasas underscore the deterioration of the Zimbabwe political climate in the months before they filed for asylum. Finally, the Mabasas point to the Zimbabwe government's recent interest in Mr. Mabasa's activities in the United States.

## II. Analysis

Asylum applications must be filed within one year after the date of the asylum seeker's arrival in the United States. 8 C.F.R. § 1158(a)(2)(B). Here, the Mabasas filed for asylum two years too late. To overcome this statutory bar they must demonstrate either the existence of changed circumstances that materially affect their eligibility for asylum or extraordinary circumstances relating to the delay in filing the petition, 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4), (5).

Pursuant to 8 U.S.C. § 1158(a)(3), courts have no jurisdiction to review a determination that an asylum application is barred due to noncompliance with the statutory time limit or the denial of one of the statutorily allowed excuses. However, the REAL ID Act of 2005, among other legal changes, conferred explicit jurisdiction on this court for appellate review of constitutional claims and questions of law. *See* REAL ID Act of 2005, § 106 (a)(1)(ii), amending 8 U.S.C. § 1252(a)(2). Pub. L. No. 109-13, 119 Stat. 231, 310-11 (2005).

In this case, the Mabasas allege a due process violation in their appeal to the BIA. The Mabasas contend that they were not afforded a meaningful opportunity to be heard since the BIA wrongly analyzed their claim as one of extraordinary circumstances when, in fact, they have

argued all along that their case is one of changed circumstances. Given the BIA's error, under the REAL ID Act we have jurisdiction to consider the Mabasas' claim. While the BIA mistakenly characterized the Mabasas' excuse as one of extraordinary circumstances, the Immigration Judge ("IJ") properly addressed their petition as one claiming changed circumstances. We review claims for asylum, withholding of removal, and relief under the CAT using the substantial evidence standard. *Ahmed v. Ashcroft*, 348 F.3d 611, 615 (7th Cir. 2003). With this standard, we assess whether the BIA's determination was "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We overturn the BIA's decision only if "the record compels a contrary result." *Brucaj v. Ashcroft*, 381 F.3d 602, 606 (7th Cir. 2004) (citing *Georgis v. Ashcroft*, 328 F.3d 962, 967-68 (7th Cir. 2003)). We review the BIA's legal conclusions *de novo. Ahmed*, 348 F.3d at 615. Aside from the BIA's mistaken characterization of the Mabasas' claim, it summarily adopted the IJ's conclusions and its ultimate decision. As a result we will review the IJ's decision directly under the same standards set forth for the BIA. *See Balogun v. Ashcroft*, 374 F.3d 492, 498 (7th Cir. 2004).

While it is true that the BIA was careless in wording its decision that affirmed the IJ's opinion in this case, the error was harmless as the IJ was correct in denying the Mabasas' asylum application. Thus, under either of the statutorily provided excuses, extraordinary circumstances or changed circumstances, the Mabasas would have lost their asylum claim. Mr. Mabasa asserts that his situation constitutes changed circumstances because the political climate in Zimbabwe worsened since he was in the United States and because members of the ruling party have recently become interested in Mr. Mabasa's efforts on behalf of the MDC in Indiana. These events, however, do not

constitute changed circumstances under the statutory meaning of the term. The Mugabe government and the oppressive climate that it engenders is the same today as when the Mabasas left Zimbabwe. The State Department Country Report for 2004 suggests that since President Mugabe and his undemocratic regime have been in power for 25 years, their control over the government through an election that was deemed to be neither free nor fair is not a new or a changed circumstance, but rather (and unfortunately) business as usual.

Further, the fact that Mr. Mabasa became active again in the MDC does not support a finding of changed circumstances since it was his very activity in the MDC that made him flee Zimbabwe originally. The proper time for Mr. Mabasa to file his asylum claim was in the year 2000. His contentions do not represent changed circumstances. Instead, they appear to be the same circumstances. Therefore, we affirm the BIA's denial of the Mabasas' asylum claim.

The Mabasas next argue that the BIA erred in finding that they were not entitled to withholding of removal or for protection under the CAT. Because the BIA summarily affirmed the IJ's decision, it constitutes the final agency determination for purposes of our review. *Balogun*, 374 F.3d at 498. The Court reviews agency decisions to deny requests for withholding of removal under the highly deferential substantial evidence standard. *Uwase v. Ashcroft*, 349 F.3d 1039, 1041 (7th Cir. 2003). For the Court to reverse the IJ's decision, Mr. Mabasa must show that "the evidence not only *supports* that conclusion, but *compels* it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1.

To establish eligibility for withholding of removal, an applicant must show that his or her "life or freedom would be threatened" in the proposed country of removal. INA § 241(b)(3)(A), 8 U.S.C. § 1208.16(b). The INA does not require withholding if an applicant "'might' or 'could' be subject to persecution." *INS v. Stevic*, 467 U.S. 407, 422

(1984). In fact, an applicant must establish a "clear probability" of persecution to avoid deportation. *Id.* at 413. A clear probability can be shown if the applicant can demonstrate that 'it is more likely than not that the alien would be subject to persecution.'" *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (quoting *INS v. Stevic*, 467 U.S. 407, 429-430).

The BIA agreed with the IJ's finding that Mr. Mabasa failed to establish a clear probability of persecution under either the requirements for showing individual or group persecution. The record contains substantial evidence to support the IJ's determination that there is not a clear probability that Mr. Mabasa will face persecution in Zimbabwe. While Mabasa presented some compelling evidence, such as the threats he and his wife have received from the ruling party supporters, the persecution of Mrs. Mabasa's father and uncle by the ruling party, and Mr. Mabasa's involvement in the MDC in both Zimbabwe and Indiana, the IJ determined that substantial evidence from the record undermined Mr. Mabasa's claim of individual persecution.

The IJ decided that compelling evidence weighed against a finding that the Mabasas would face a clear probability of persecution. Specifically, the IJ relied on the fact that when Mr. Mabasa left Zimbabwe, the government did not detain him, but stamped his passport instead. Further, after ruling party supporters threatened and pushed Mrs. Mabasa at the Mabasas' home in search of her husband, and despite Mr. Mabasa's political activities, the Zimbabwean government did not retaliate against Mrs. Mabasa by terminating or even changing her position at the government-run bank. Also, once Mrs. Mabasa decided to leave Zimbabwe, the government did not detain her or question her about Mr. Mabasa's whereabouts. Rather, the government stamped her passport and allowed her to leave. Additionally, three of Mr. Mabasa's siblings, who are also MDC members, live

in Zimbabwe unharmed. These three siblings were not questioned about Mr. Mabasa's whereabouts. One of the siblings is a government employee. Mr. Mabasa's parents also live in Zimbabwe unharmed.

Although Mrs. Mabasa's father was apparently killed by regime supporters in 2000 and her uncle was similarly killed in the 1980s, the record indicates that the two were men of high position: an influential businessman/landowner and a military commander, respectively. Thus, there were other reasons to target these two relatives. Mr. Mabasa is not similarly situated, and the Mabasa family is not, in and of itself, a specific target of persecution. Mr. Mabasa's involvement in the MDC, in comparison, is minor and he has not described himself as an influential businessman or landowner in Zimbabwe. Although persecution of an applicant's family may be relevant in determining whether an applicant's fear of persecution is well-founded, this court has held that a claim of "derivative persecution," without additional evidence that a respondent himself or herself would be subjected to future persecution, does not establish a well-founded fear of persecution. *See Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000); *Najafi v. INS*, 104 F.3d 943, 947 (7th Cir. 1997).

Mr. Mabasa also cannot meet the requirements for group persecution. To obtain withholding of removal based on group persecution, an applicant must prove that there is a pattern or practice of persecution against a group of persons on account of race, religion, nationality, membership in a particular social group or political opinion. The applicant must then establish his or her own inclusion in and identification with such a group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country. 8 C.F.R. § 1208.16(b)(2)(I) and (ii). Mr. Mabasa has indeed proven his membership in the MDC, but the MDC is an enormous political organization. The MDC holds 57 of 120 seats in

Zimbabwe's parliament and one-third of the Zimbabwe population belongs to the MDC. While the 2004 State Department Country Report details oppression of MDC political opposition, Mr. Mabasa has not demonstrated that the group persecution is so severe that every member's life or freedom is at serious risk. In fact, in light of his siblings who are MDC members and are unharmed in Zimbabwe, Mr. Mabasa's case showed that not every member is at risk. Given such evidence, Mr. Mabasa failed to meet the standard for withholding of removal under the group persecution requirements as well.

Further, after thorough analysis, the IJ concluded that Mr. Mabasa had failed the lower burden of proof required for asylum. Thus, it logically follows that the Mabasas failed to satisfy the more stringent clear probability of persecution standard required for withholding of removal. *See Marquez v. INS*, 105 F.3d 374, 382 (7th Cir. 1997). Consequently, we affirm the BIA's decision denying the Mabasas' application for withholding of removal.

Finally, the Mabasas argue they are eligible for withholding of removal under the CAT. An applicant for withholding of removal under the CAT bears the burden of proving that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . with the consent or acquiescence of a public official." *Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004) (citing 8 C.F.R. § 1208.18(a)(1)). Acquiescence requires that the public official have prior awareness of the activity and thereafter breach his or her legal responsibility to intervene to prevent such activity. 8 C.F.R. § 1208.18(a)(7).

The IJ found that Mr. Mabasa did not present sufficient evidence to support his claim that he would be tortured.

She held that Mr. Mabasa did not meet the standard of showing that it is "more likely than not" that he would be tortured if removed to Zimbabwe. Therefore, the BIA was correct in affirming the denial of Mr. Mabasa's request for withholding of removal under the CAT.

### III.  Conclusion

The IJ's and BIA's decisions regarding the Mabasas are AFFIRMED and their petition for review is denied.

WILLIAMS, *Circuit Judge*, dissenting.    I agree that, notwithstanding the BIA's mischaracterization of the circumstances surrounding the Mabasas' delayed asylum efforts, their asylum claim was properly dismissed as untimely. However, I disagree with my colleagues' conclusion that Mr. Mabasa failed to show he likely will be harmed by the Zimbabwean ruling party if he is deported. Because I believe the Mabasas are entitled to withholding of removal or protection under the Convention Against Torture ("CAT"), I respectfully dissent.

To establish a claim for withholding of removal, a petitioner must demonstrate that his life or freedom would be threatened in his home country on account of his race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A); *Cuevas v. INS*, 43 F.3d 1167, 1171 (7th Cir. 1995). Similarly, to obtain protection under the CAT, the petitioner

must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). In essence, to establish a claim for withholding of removal or for protection under the CAT, Mr. Mabasa must demonstrate that there is a clear probability (more likely than not) he will be persecuted[1] or tortured[2] if he is returned to Zimbabwe. *Zheng v. Gonzales*, 409 F.3d 804, 809 (7th Cir. 2005).

The majority concludes that, despite uncontroverted evidence documenting his family's incidents of persecution and torture at the hands of the Zimbabwean government, Mr. Mabasa has failed to show that he would be harmed on account of his political opinion. This is where my colleagues and I disagree. Mr. Mabasa presented compelling evidence that he likely will face persecution and torture if returned to Zimbabwe.

First, as the majority acknowledges, political conditions in Zimbabwe are oppressive. President Mugabe's autocratic

---

[1] "[P]ersecution means punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate . . . includ[ing] . . . detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Firmansjah v. Gonzales*, 424 F.3d 598, 605 (7th Cir. 2005) (internal quotations omitted).

[2] "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 CFR § 208.18(a)(1).

regime has, over the course of 25 years, ruled the country through intimidation and violence. In 2002, the United States issued a State Department report describing political conditions in Zimbabwe:

> "[T]he Government of Zimbabwe developed and employed an aggressive strategy designed to cripple its political opposition. This strategy was marked by a collapse in the rule of law, serious human rights abuses, and the subversion of democratic institutions including the judiciary and independent media . . . [T]he Government of Zimbabwe pursued economic policies, including a violent and chaotic land redistribution program that resulted in Zimbabwe's downward economic spiral."

Appellants' Brief, Short Appendix at 33.

Second, Mr. Mabasa's alignment with the political minority has made him a target of government backlash: as a result of his MDC membership, in 1999, Mr. Mabasa was threatened by a Zimbabwean ruling-party official; after he fled to the United States, government supporters assaulted and threatened his wife in an effort to discover his whereabouts; and, perhaps most persuasive, Mr. Mabasa received a clear murder threat (vis-a-vis his brother) from government intelligence officers warning that he would be killed if he returned to Zimbabwe.

The majority discounts the likelihood that Mabasa will be harmed, stating that MDC leaders or organizers are susceptible to persecution and torture, whereas MDC members are not. However, the record does not support this premise. To the contrary, Mr. Mabasa's brother testified at the immigration proceeding that, while attending an MDC rally in 2002, ruling-party supporters "attacked the MDC members." IJ Order at 5. The brother testified that he was beaten during the melee, and that his cousin was beaten and tortured for two days. Nothing in the record indicates that either of them was an MDC leader or organizer.

Instead, this testimony, which the IJ credited, suggests that active MDC members are routine targets of ruling-party violence, regardless of their place in the opposition hierarchy.

Even more puzzling given the outcome here, the immigration judge found Mr. Mabasa to be credible, noting that "there are no significant discrepancies between the testimony and the documentary evidence in support of the application." IJ Order at 6. In the normal course, "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.16(c)(2). In addition, corroborating evidence that is relevant to the applicant's burden of proving the possibility of future torture may include evidence of past torture inflicted on the applicant, evidence of "gross, flagrant or mass violations of human rights within the country of removal," and other information regarding conditions in the country of removal. 8 C.F.R. § 208.16(c)(3)(iii). For instance, in *Lhanzom v. Gonzales*, 430 F.3d 833 (7th Cir. 2005), we addressed a Tibetan petitioner's claims for withholding of removal and protection under the CAT, in which she alleged being forced into a Chinese labor camp and having her political activities monitored by the Chinese government. In granting the petition for review, we acknowledged that if the petitioner was credible, she would meet the requisite standard for demonstrating persecution and torture. *Id.* at 849.

It is, therefore, difficult to reconcile the IJ's determination that credible evidence existed that Zimbabwean government officials directly threatened Mr. Mabasa's life with her ultimate conclusion that he is not entitled to withholding of removal. To be sure, if we were solely reviewing the merits of the Mabasas' asylum claim, then the IJ's discretionary determination would arguably withstand this court's deferential standard of review. This case is different,

however, because we are also asked to review the IJ's determination that the Mabasas are not entitled to withholding of removal or protection under the CAT. "Unlike the decision to grant asylum, which is discretionary even if the criteria for asylum are met, the Attorney General *must* withhold deportation if he determines 'that the alien's life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.'" *Firmansjah v. Gonzales*, 424 F.3d 598, 604-05 (7th Cir. 2005)(quoting 8 U.S.C. § 1231(b)(3)(A)) (emphasis in original).

At the end of the day, neither the IJ, the BIA, nor my colleagues disbelieve Mr. Mabasa's rendition of the facts. Yet, his evidence still falls short, and it is unclear what more the law requires. Where political oppression in a petitioner's home country is business as usual, the petitioner receives a murder threat from government officials on account of his political beliefs, and the immigration judge concludes there is "no basis upon which to doubt the lead respondent's credibility," I believe the record establishes a presumption of clear probability of future persecution and torture. IJ Order at 6. Furthermore, the Government has not rebutted this presumption by demonstrating a fundamental change in circumstances. *See Firmansjah*, 424 F.3d at 605. Indeed, the Government has done quite the contrary, arguing that there have been no changed circumstances in Zimbabwe that would justify the untimeliness of the Mabasas' asylum claim. The record of evidence, documenting the political climate in Zimbabwe and Mr. Mabasa's own run-ins with the government, paints a compelling picture of political persecution that I believe entitles him to withholding of removal or protection under the CAT.

For these reasons, I respectfully dissent.

No. 04-4144                                                            15

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*