**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued December 12, 2006
Decided December 21, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05–4635

| | |
|---|---|
| LAHBIB OUINTI, <br> *Petitioner*, | On Petition for Review of an Order of <br> the Board of Immigration Appeals |
| *v.* | No. A95-925-001 |
| ALBERTO R. GONZALES, Attorney <br> General of the United States, <br> *Respondent*. | |

**O R D E R**

Facing removal for remaining in the U.S. long after his visitor's visa expired, Lahbib Ouinti applied for asylum, claiming that he fled Algeria in 1997 because he was persecuted by the Groupe Islamique Armé ("GIA") and will be harmed or killed if he returns.  Finding that Ouinti's asylum application was time-barred, the Immigration Judge ("IJ") considered his application as a request for withholding of removal and relief under the Convention Against Torture.  The IJ denied both forms of relief but granted Ouinti voluntary departure.  The Board of Immigration Appeals ("BIA") affirmed, and Ouinti petitions for review of the denial of his withholding of removal claim.  We deny his petition for review.

Ouinti, who is 46, was born in Mechera, Algeria.  In 1987 he received a teaching certificate in art from the Medeghri Institute of Technology in Saïda,

Algeria, and began working as an art teacher at a public high school in Bougtob, Algeria. He worked there until July 1997, when he started receiving death threats from the GIA, a radical Islamic group. *See Hor v. Gonzales*, 421 F.3d 497, 499 (7th Cir. 2005); *Ahmed v. Ashcroft*, 348 F.3d 611, 614 (7th Cir. 2003). According to Ouinti, unidentified members of the group called him "three or four times" at his home and told him that he had to quit his job or he would be killed. After receiving a letter from the GIA repeating the same threat, Ouinti fled to the Algerian city of Olan and then to Tunisia, where he obtained a visitor's visa for the United States.

When Ouinti arrived in New York in October 1997, he did not apply for asylum because he was "scared" and unaware of the asylum process. Instead, he traveled to Chicago, where he remained well past the expiration of his visa. In February 2003, the Department of Homeland Security informed Ouinti that he had overstayed his visa and commenced removal proceedings under 8 U.S.C. § 1227(a)(1)(B). Ouinti conceded removability and applied for asylum, appearing for his hearing on October 6, 2004.

Although the IJ deemed Ouinti credible, the IJ found his asylum claim time-barred with no "exceptional circumstances" to excuse the delay. *See* 8 U.SC. § 1158(a)(2). The IJ also concluded that Ouinti was not entitled to withholding of removal because the threats he received were insufficient to qualify as past persecution and the improved political situation in Algeria undermined the likelihood that he would be persecuted if he returned. Finally, the IJ concluded that Ouinti was not entitled to relief under the Convention Against Torture. *See* 8 C.F.R. § 208.18(a). The BIA adopted and affirmed the IJ's decision, and Ouinti appeals.

Where, as here, the BIA has adopted the IJ's reasoning without opinion, we review the IJ's decision directly and will uphold it as long as it is supported by reasonable, substantial and probative evidence on the record considered as a whole. *Mabasa v. Gonzales*, 455 F.3d 740, 744 (7th Cir. 2006). We will overturn the BIA's decision only if "the record compels a contrary result." *Id.* (quotation marks and citation omitted). To qualify for withholding of removal, Ouinti was required to demonstrate a "clear probability"—i.e., it is more likely than not—that he will be persecuted if he returns to Algeria. *Firmansjah v. Gonzales*, 424 F.3d 598, 605 (7th Cir. 2005). If he suffered past persecution, Ouinti was entitled to a presumption of future persecution. *Id.*

Ouinti first argues that the IJ erred by determining that he did not suffer past persecution based on the threatening phone calls and letter he received. But threats alone will rarely compel a finding of past persecution. *See Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006); *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005); *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997). Over the

course of a month, Ouinti received "three or four" phone calls and a letter, each telling him that he would be killed if he did not quit his job. But he was never physically harmed and had no contact with the GIA except by phone and letter, and at his asylum hearing he presented no evidence suggesting that the GIA intended to follow through on its threats. Thus, the threats Ouinti received were not of a "most immediate and menacing nature" that might compel a finding of persecution. *See Bejko*, 468 F.3d at 486; *Ahmed*, 348 F.3d at 616; *Hernandez-Baena*, 417 F.3d at 723; *Boykov*, 109 F.3d at 416; *cf. Nakibuka v. Gonzales*, 421 F.3d 473, 477 (7th Cir. 2005) (soldier stating death threat while pressing gun against applicant's head supported finding of persecution). Accordingly, the IJ's determination that Ouinti had not suffered past persecution is supported in the record.

Without evidence of past persecution, Ouinti bore the burden of showing that he would more likely than not be persecuted if returned to Algeria. *See Firmansjah*, 424 F.3d at 606. He did not make such a showing. Instead, he testified that the last time he or his family members (who remain in Algeria) were ever contacted by the GIA was in 2000. But he offered his personal belief that the GIA is still active in Algeria and that they "kill a lot of people," including "anyone who support[s] the government." Ouinti supported these assertions only with documentary evidence dated no later than 1998.

The IJ found the State Department's 2003 Country Report more convincing; the report states that conditions in Algeria have improved since the 1990s and that daily violence has declined. Although the 2003 report acknowledges that terrorist groups continued to target "government officials," it also observes that attacks on civilians were often for financial, not political reasons. Indeed, more recent State Department reports indicate that the number of active terrorists in Algeria has declined dramatically since the mid-1990s and that the government's successful efforts to capture GIA leaders has "further weakened the effectiveness" of the GIA. U.S. State Department, *Country Report on Terrorism in Algeria* (2005). As a sign of the decline in hostilities, in 2005 President Bouteflika proposed an amnesty for members of insurgent groups involved in the violence of the 1990s. *See* U.S. State Department, *Country Report on Terrorism in Algeria* (2006).

We have held that "unsubstantiated, uncorroborated, and self-serving evidence concerning current political conditions in a country is not sufficiently credible evidence to reverse the BIA or to rebut the BIA's reliance on a Country Report." *Pop v. INS*, 279 F.3d 457, 462 (7th Cir. 2002). Here, Ouinti did not present any current documentation about political conditions in Algeria, nor did he offer any evidence to suggest that he would be targeted for persecution upon return. Thus, the IJ was entitled to give more weight to the more recent country report, *see id.* at 462, which suggests that Ouinti is unlikely to be persecuted. Thus, since Ouinti did not corroborate his claim that he faces a clear probability of persecution

if returned to Algeria, the IJ's denial of his withholding of removal claim is supported by substantial evidence.

Accordingly, we DENY the petition for review.