In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3576

SYLVIANA D. KAHARUDIN,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

———————

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A79-267-261

———————

SUBMITTED JULY 10, 2007—DECIDED AUGUST 31, 2007

———————

Before BAUER, CUDAHY and RIPPLE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Sylviana Kaharudin, a native and citizen of Indonesia, arrived in the United States on July 3, 1998 and overstayed her nonimmigrant visitor's visa. After applying for asylum in March of 2001, Ms. Kaharudin was served a summons to appear before an Immigration Judge ("IJ"). At her hearing, Ms. Kaharudin conceded removability, but sought asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). The IJ denied Ms. Kaharudin's application for asylum as untimely and her application for withholding of removal on the ground that she had not shown a clear probability

of persecution. The IJ also denied Ms. Kaharudin's request for CAT relief because she had not shown that she had been tortured by the government of Indonesia in the past or that she would be tortured by it if she returned. Ms. Kaharudin appealed to the Board of Immigration Appeals ("BIA"), which affirmed the decision of the IJ in a brief, per curiam order.

Ms. Kaharudin now petitions for review those portions of the BIA's order affirming the IJ's decision to deny her applications for asylum and withholding of removal. For the reasons set forth in this opinion, we deny her petition for review.

# I

## BACKGROUND

Before coming to the United States, Ms. Kaharudin lived with her parents in Jakarta. Although Ms. Kaharudin was born in Indonesia, she is of Chinese descent, an ethnic minority in Indonesia. Additionally, although Indonesia is predominantly Muslim, Ms. Kaharudin is a Christian. In 1998, ethnic Chinese and Christian Indonesians in Jakarta were subject to acts of violence at the hands of non-Chinese, mostly Muslim, Indonesians.[1] Fearing for her safety, in July of 1998, Ms. Kaharudin's parents sent her to live with her sister in the United States.

---

[1] Ms. Kaharudin refers to these individuals as "native Indonesians." For ease of discussion, we shall do the same.

Ms. Kaharudin overstayed her visa, which expired in January of 1999. More than two years later, in March of 2001, she applied for asylum, withholding of removal and CAT relief. Ms. Kaharudin was then served with a notice to appear before an IJ. At the hearing, she conceded removability, but continued to press her requests for asylum, withholding of removal and CAT relief. She asserted that she was entitled to asylum and withholding of removal on the ground that she was subject to persecution because of her membership in a particular social group, Indonesians of Chinese descent, and on account of her religion, Christianity.

At the hearing on the merits of her requests, Ms. Kaharudin testified about the general conditions in Indonesia as they related to treatment of Christians and ethnic Chinese Indonesians. In her testimony, she acknowledged that the relationship between native Indonesians and Indonesians of Chinese descent as well as Christian Indonesians always had been bad. However, she further testified that conditions in Jakarta prior to her departure in July of 1998 were marked by violence against ethnic Chinese and Christian Indonesians, including the burning of Christian churches and the rape of ethnic Chinese women.

Ms. Kaharudin also testified to her own experiences around that time. She testified that on various occasions native Indonesians had called her derogatory names, thrown rocks at her, spit on her and attempted to touch her buttocks while she rode on public transportation. However, Ms. Kaharudin also testified that she never reported these incidents to the police because she believed that Indonesian authorities would not care about the ill treatment. She further testified that she feared she

would be harmed if she returned to Indonesia because of continued conflict between Muslims and Christians in Indonesia.

Ms. Kaharudin's testimony was corroborated by newspaper articles and by human rights reports from various organizations, including the State Department. These reports confirmed that there had been acts of ethnic violence in 1998 and that these acts included the rape of ethnic Chinese women. The reports also indicated that Christians continued to experience harassment and discrimination. However, the more recent reports also indicated that such abuses as the rape of ethnic Chinese women had not occurred recently. The reports further indicated that there had not been similar outbreaks of ethnic violence in Jakarta since 1998.

At the conclusion of the hearing, the IJ denied Ms. Kaharudin's application for asylum on the ground that she had failed to file her application within one year of her arrival, as required by 8 U.S.C. § 1158(a)(2)(B). The IJ further held that she had not demonstrated any material changes in the conditions in Indonesia or extraordinary circumstances that would justify her failure to apply within one year of arrival. The IJ then denied Ms. Kaharudin's application for withholding of removal because she had failed to demonstrate a clear probability of persecution if she returned to Indonesia. The IJ determined that Ms. Kaharudin had not been subjected to past persecution, concluding that, at most, she had been subjected to discrimination and harassment. The IJ then concluded that Ms. Kaharudin had not demonstrated a well-founded fear of future persecution. The IJ noted that Ms. Kaharudin's fear that she would be raped because of her Chinese ancestry if she returned to Indonesia was not

credible given the current circumstances in Indonesia, in general, and Jakarta, in particular. The IJ pointed to a number of human rights reports introduced into evidence that indicated that the widespread rape of ethnic Chinese women in 1998 had not occurred recently and that there had not been an outbreak of such violence in Jakarta since 1998. The IJ further noted that the Indonesian constitution guaranteed religious freedom and that State Department country reports indicated that Indonesia's majority Muslim population generally was tolerant of adherents to the Christian faith.

Lastly, the IJ denied Ms. Kaharudin's request for CAT relief because she had not pointed to any indication of past torture by the government of Indonesia or that she would be tortured on her return. The IJ added that what little contact Ms. Kaharudin had with the government of Indonesia had been harmless.

Ms. Kaharudin then appealed the decision of the IJ to the BIA. The BIA affirmed the decision of the IJ in all respects in a brief, per curiam order. The BIA largely adopted the findings and reasoning of the IJ. With respect to Ms. Kaharudin's asylum application, the BIA noted its agreement with the IJ that Ms. Kaharudin had not demonstrated changed or extraordinary circumstances that would excuse her failure to apply within one year of having turned eighteen,[2] but added that, even if such circumstances did exist, Ms. Kaharudin nonetheless had failed to apply for asylum within a reasonable time.

---

[2] Ms. Kaharudin was seventeen years old when she arrived in the United States. She turned eighteen in December of 1998, before her visa expired and more than two years before applying for asylum.

Additionally, Ms. Kaharudin urged the BIA to apply a lower standard of proof with respect to her applications for withholding of removal because she was ethnic Chinese and a Christian. She first asserted that, based on the Fifth Circuit's decision in *Eduard v. Ashcroft*, 379 F.3d 182 (5th Cir. 2004), she need not show that she has been targeted personally for persecution because ethnic Chinese and Christians in Indonesia have been subject to a "pattern and practice" of persecution. In the alternative, Ms. Kaharudin submitted that, following the approach adopted by the Ninth Circuit, *see Sael v. Ashcroft*, 386 F.3d 922 (9th Cir. 2004), she need only show a comparatively low-level of individualized risk of future persecution because ethnic Chinese have been deemed a "disfavored group" in Indonesia. The BIA declined to adopt these approaches, noting that Ms. Kaharudin's application was governed by the law of the Seventh Circuit. The BIA added that, in any event, the lower evidentiary burdens she cited had not been applied beyond applications for asylum, which are subject to a lower evidentiary burden than that applied to withholding of removal.

## II

## DISCUSSION

Ms. Kaharudin now petitions for review the decision of the BIA with respect to her applications for asylum and withholding of removal.[3] Where, as here, the BIA adopts the decision of the IJ and supplements that decision with its own reasoning, our review is of the IJ's decision as

---

[3] Ms. Kaharudin does not challenge the denial of her request for CAT relief.

supplemented. *Pavlyk v. Gonzales*, 469 F.3d 1082, 1087 (7th Cir. 2006). We review the denials of asylum and with-holding of removal under the substantial evidence standard. *Mabasa v. Gonzales*, 455 F.3d 740, 744 (7th Cir. 2006). This is a deferential standard of review, and we shall not reverse the decision of the BIA unless the petitioner can demonstrate not only that the evidence supports a contrary conclusion, but that the evidence compels such a conclusion. *Id.* at 745.

**A.**

Ms. Kaharudin first contends that she was entitled to asylum. The IJ and the BIA determined that she had failed to apply for asylum within one year of arriving in the United States or reaching eighteen years of age, as required by 8 U.S.C. § 1158(a)(2)(B), and had not established any changed or extraordinary circumstances that would excuse such failure. We lack jurisdiction to review both the conclusion that Ms. Kaharudin's application for asylum was untimely and that she had failed to establish changed or extraordinary circumstances that would excuse such failure. 8 U.S.C. § 1158(a)(3); *Mabasa*, 455 F.3d at 744. There being no other error asserted with regard to the denial of Ms. Kaharudin's application for asylum, we conclude that the decision was supported by substantial evidence.

**B.**

Ms. Kaharudin also asserts that she was entitled to withholding for removal. To establish eligibility for withholding of removal, Ms. Kaharudin must demonstrate

a clear probability that she will face persecution if she is removed to Indonesia. *See Pavlyk*, 469 F.3d at 1087. This is a more stringent burden than that applied to asylum claims, which Ms. Kaharudin can meet only by showing that it is more likely than not that she will be persecuted on account of her membership in a specified group. *Id.* Although past persecution "may imply a future threat and so require the agency to demonstrate that conditions have improved, . . . the focus remains on what is likely to happen following an alien's return home." *Kobugabe v. Gonzales*, 440 F.3d 900, 901 (7th Cir. 2006); *see also* 8 C.F.R. § 1208.16(b)(1)(I).

   Ms. Kaharudin first contends that the BIA erred in finding that she had not established a clear probability of persecution if she were to return to Indonesia. In support of her application, she points to past encounters in which native Indonesians called her derogatory names, spat upon her, hit her with rocks and touched her buttocks. These encounters fall far short of persecution. "[U]npleasant and even dangerous conditions do not necessarily rise to the level of persecution." *Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (citing *Mitev v. INS*, 67 F.3d 1325, 1331 (7th Cir. 1998)). To constitute persecution, the harm "must rise above the level of mere harassment." *Prela*, 394 F.3d at 518; *cf. Mitreva v. Gonzales*, 417 F.3d 761, 764 (7th Cir. 2005) (characterizing rocks thrown at the petitioner as harassment and discrimination, not persecution). Additionally, "acts of private citizens do not constitute persecution unless the government is complicit in those acts or is unable or unwilling to take steps to prevent them." *Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006). Ms. Kaharudin points to no evidence in the record that the government of Indonesia was

complicit in or unable or unwilling to protect against the harm of which she complains. Indeed, she admits that she never sought assistance from the government in response to these acts.

Nonetheless, Ms. Kaharudin asserts that, even if she was not persecuted in the past, she still has a well-founded fear of future persecution. Further, she contends that she need not establish that she personally has been targeted for persecution because there is a "pattern or practice" of persecution against Chinese Christians in Indonesia. An applicant seeking withholding of removal can meet her burden of demonstrating a clear probability of persecution by showing that she is a member of a group subjected to a "pattern or practice" of persecution in that country. 8 C.F.R. § 1208.16(b)(2); *Mabasa*, 455 F.3d at 746. However, to prevail under a "pattern or practice" theory, the persecution faced by the group must be extreme. *Ahmed v. Gonzales*, 467 F.3d 669, 675 (7th Cir. 2006). The applicant must establish that there exists a "systemic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group, and this effort must be perpetrated or tolerated by state actors." *Id.* (citing *Mitreva*, 417 F.3d at 765).

The record does not support the conclusion that ethnic Chinese Christians are subject to a pattern or practice of persecution in Indonesia. First, there is no evidence in the record to suggest that the government of Indonesia was complicit in or unwilling or unable to protect ethnic Chinese Christians against the private acts of violence by native Indonesians. Without such complicity or unwillingness or inability to protect, such private acts of violence cannot constitute persecution. *See Chakir*, 466 F.3d at 570.

Additionally, although the IJ noted that ethnic and religious strife persists in some parts of Indonesia, the documentary evidence demonstrates that violence against ethnic Chinese Christians in Jakarta, where she and her family lived before Ms. Kaharudin came to the United States, has not broken out on a large scale since 1998. An applicant for withholding of removal "cannot demonstrate that his or her life or freedom would be threatened if the . . . immigration judge finds that the applicant could avoid a future threat . . . by relocating to another part of the proposed country of removal and, under all of the circumstances, it would be reasonable to expect the applicant to do so." *See* 8 C.F.R. § 1208.16(b)(2). Here, the record demonstrates that, even if Ms. Kaharudin may face persecution some places in Indonesia, she does not face such a threat in Jakarta. Given that Jakarta is Ms. Kaharudin's family home, it is not unreasonable to expect her to locate there.

Thus, we conclude that there is substantial evidence to support the BIA's determination that Ms. Kaharudin has not demonstrated that ethnic Chinese Christians face a pattern or practice of discrimination.[4] However, in the

---

[4] Ms. Kaharudin relies primarily upon the Fifth Circuit's decision in *Eduard v. Ashcroft*, 379 F.3d 182, 192 (5th Cir. 2005), to support her "pattern or practice" claim. In *Eduard*, the court concluded that persecution against Chinese Christians was so widespread in Indonesia as to constitute a "pattern or practice" of persecution, such that the applicant for asylum was not required to show that he had been targeted personally. *Id.* at 192. However, in *Eduard*, the Fifth Circuit did not address the question of whether the Indonesian government was complicit in or unwilling or unable to prevent violence against

(continued...)

alternative, Ms. Kaharudin asserts that she is entitled to
withholding of removal under the "disfavored group"
analysis adopted by the Ninth Circuit. Under that analysis,
the greater the risk to all members of a group, the less
individual persecution need be shown in order to qualify
for relief. *See Sael v. Ashcroft*, 386 F.3d 922, 925 (9th Cir.
2004); *Kotasz v. INS*, 31 F.3d 847, 852-54 (9th Cir. 1994). The
Ninth Circuit has deemed ethnic Chinese a disfavored
group in Indonesia, *see Sael*, 386 F.3d at 927, and Ms.
Kaharudin urges this court to do the same. We previously
have considered and rejected the application of the Ninth

---

[4] (...continued)
ethnic Chinese Christians. As we already have stated, harm at
the hands of private persons cannot constitute persecution
without such a showing. We note also that each of the other
circuits to address the issue has declined to find a pattern or
practice of persecution of Christian Indonesians of Chinese
descent. *See Lolong v. Gonzales*, 484 F.3d 1173, 1180-81 (9th Cir.
2007) (en banc) (holding that the petitioner had failed to
demonstrate a pattern or practice of persecution of ethnic
Chinese Christians because the Indonesian government did
not perpetrate the discrimination and had "taken concrete
steps to suppress ethnic and religious violence"); *Tolego v.
Gonzales*, 452 F.3d 763, 766 (8th Cir. 2006) (noting the absence
of evidence of acquiescence by the Indonesian government to
violence against ethnic Chinese Christians); *Tulengkey v. Gonza-
les*, 425 F.3d 1277, 1281-82 (10th Cir. 2005) (declining to follow
*Eduard* where the IJ had determined that relocation to avoid
persecution was feasible); *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d
Cir. 2005) (holding that the petitioner had not established
government action or acquiescence in the violence against
ethnic Chinese Christians and noting that the record revealed a
"sharp decline in violence against Chinese Christians follow-
ing the period of intense violence in 1998").

Circuit's "disfavored group" analysis in the context of withholding of removal, and we decline to revisit the issue in this case. *See Firmansjah v. Gonzales*, 424 F.3d 598, 607 n.6 (7th Cir. 2005); *see also Lie v. Ashcroft*, 396 F.3d 530, 538 n.4 (3d Cir. 2005) (declining to adopt the Ninth Circuit's "disfavored group" analysis).

### Conclusion

The denial of Ms. Kaharudin's applications for asylum and withholding of removal was supported by substantial evidence. Therefore, we deny Ms. Kaharudin's petition for review and affirm the order of the BIA.

PETITION DENIED
ORDER AFFIRMED

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*