NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 11, 2008
Decided June 26, 2008

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-2693

| | |
|---|---|
| BOUKHEMIS AMIOUR, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| *v.* | No. A77 656 334 |
| MICHAEL B. MUKASEY, | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Boukhemis Amiour, a native and citizen of Algeria, entered the United States on a tourist visa in 1987 and has lived in this country ever since. In 2003 the Attorney General began removal proceedings against him. Amiour conceded that he was subject to removal but, as relevant here, applied for withholding of removal. An immigration judge denied relief on the ground that Amiour had failed to establish that he more likely than not would be persecuted if he is returned to Algeria, but granted Amiour voluntary departure. The Board of Immigration Appeals affirmed the IJ's decision. Amiour now petitions for review.

Because the administrative record does not compel a finding that Amiour would more likely than not face persecution if returned to Algeria, we deny his petition for review.

In September 1987, Amiour, who is now 57 years old, legally entered the United States at Port Huron, Michigan, with a six-month tourist visa. In January 2003 he was charged under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), with overstaying his visa. Amiour conceded removability but requested withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture.

Amiour was the only witness at his merits hearing in February 2006. He testified that he was born in Sidi Abdelaziz, Algeria, in 1951, but lived in Souk Ahras, a town of about 150,000 near the border with Tunisia. He left school to work in the family bakery when he was about 18 years old and continued to work in the bakery until he left Algeria for the United States in 1987.

Amiour testified that he left Algeria because of his pro-Western political views. The Algerian government maintained close ties to the Soviet Union from the time the country gained independence in 1962 through at least 1987 when Amiour left, but Amiour conceded that he was not involved politically before he departed and had never encountered problems with governmental authorities. Nor did he return to Algeria after the collapse of the Soviet Union. Amiour explained that he feared "Islamic fundamentalists" who targeted "anybody" espousing pro-Western or pro-democracy views during the civil war of the 1990s. Amiour suggested that Islamic factions killed or tortured those who opposed them. Two of his cousins, he said, were killed by "Islamic terrorists." One cousin was killed in 1993 because he was pro-Western and refused to pay "Islamic fundamentalists" who tried to extort money from him. The other cousin, a junior officer in the Algerian army, was killed by Islamic terrorists in 1995.

Amiour did not acknowledge, however, that the civil war had ended before he received his Notice to Appear in 2003. His mother, brother, and three sisters still live in Algeria. None of them has been harmed by Islamic terrorists or the Algerian government. And although he speaks with family members once every two weeks, Amiour did not appear to be current on political developments in Algeria, such as when the current president was last elected. When asked, Amiour could not give a specific reason why he would be unsafe in Algeria (other than his assertion that no pro-Western resident is safe), and he conceded that the conditions there had improved significantly since he left in 1987. He also conceded that there are many pro-Western people in Algeria, especially those in contact with the French, who play a major role in the Algerian economy.

In addition to his testimony, Amiour submitted an affidavit from Jamal Nassar, a professor at Illinois State University. Nasser states in his undated affidavit that he has done "extensive studies and research in Middle East politics and international relations and terrorism." He notes that since 1992 there has been armed conflict between the Algerian government and Islamic fundamentalists, which has resulted in over 100,000 deaths, and that the Islamic fundamentalists target pro-Western, pro-democracy individuals who oppose governmental imposition of Islam.

Finally, Amiour offered the Department of State country reports on Algeria for 2002 and 2004; a Congressional Research Service report on current issues in Algeria from February 2005; and several other publications including reports by Amnesty International, *The New York Times*, and *The Washington Times*.

In denying relief the IJ credited Amiour's testimony but concluded that his fear of returning was not based on any facts particular to him, and that he had not shown a basis for his claim for relief. First, the IJ noted that Amiour's fear is a general one. Moreover, the IJ found that Amiour demonstrated he was not familiar with the current country conditions, and so his fear of Islamic militant groups is tempered by his lack of knowledge about their current strength, particularly in light of the reports suggesting that the situation in Algeria has improved greatly since Amiour departed. The IJ reasoned that Amiour faces no greater risk than other Algerians since he lacks any history of political or religious activism, has been gone for twenty years, and has suffered no physical harm either to himself or his immediate family. And although the IJ evaluated the information provided by Nasser, he did not weigh it heavily, given that Nasser's c.v. reveals that the vast majority of his work centers on Israeli-Palestinian issues, rather than Algeria or even North Africa. The IJ granted Amiour voluntary departure, and ordered him removed in the alternative if he failed to comply.

Amiour then appealed, and, in a memorandum order supplementing the IJ's oral decision, the BIA affirmed. The BIA noted that Amiour had failed to demonstrate the existence of any objective threat, primarily on the basis that Amiour had never suffered any harm from anyone in Algeria before he left, and that Amiour had also failed to demonstrate the existence of a pattern or practice of persecution of those holding pro-Western views.

In his petition for review, Amiour contends that the IJ erred by denying his application for withholding of removal because, he insists, his evidence established that it is more likely than not that he will be persecuted on account of his membership in a social group and his political opinions if he is returned to Algeria. Amiour has abandoned his claim to relief under the Convention Against Torture. *See Haxhiu v. Mukasey*, 519 F.3d 685, 692 (7th Cir. 2008).

To establish eligibility for withholding of removal, the "applicant must demonstrate a clear probability of persecution on account of his 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007) (quoting 8 U.S.C. § 1231(b)(3)(A)). To establish a "clear probability" the petitioner "must demonstrate that 'it is more likely than not that [he] would be subject to persecution' in the country to which he would be returned." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (quoting *INS v. Stevic*, 467 U.S. 407, 429-30 (1984)). "Persecution" does not include the acts of private citizens unless the government is complicit in those acts, or is unwilling or unable to take steps to prevent them. *Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006). We review the denial of withholding of removal under the substantial-evidence test and will not overturn the decisions of the immigration courts unless the evidence compels that result. *Mabasa v. Gonzales*, 455 F.3d 740, 745 (7th Cir. 2006).

Amiour tried to establish that he more likely than not would face persecution in Algeria by demonstrating the existence of a "pattern or practice" of persecution of similarly situated individuals. *See* 8 C.F.R. § 1208.16(b)(2); *Mabasa*, 455 F.3d at 746. To establish eligibility for withholding of removal based on a pattern or practice of persecution, an applicant must show a "'systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group, and this effort must be perpetrated or tolerated by state actors.'" *Kaharudin v. Gonzales*, 500 F.3d 619, 623-24 (7th Cir. 2007) (quoting *Ahmed v. Gonzales*, 467 F.3d 669, 675 (7th Cir. 2006)). *See Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005).

Amiour did not meet this burden. He suggests that if returned to Algeria he would face "persecution" on account of (1) his membership in a social group, which he defines as "western-oriented, pro-democratic civilians of Algeria who oppose the terrorist groups fighting for the establishment of Islamic regime," and (2) his political opinion supporting the Algerian "government opposing the Islamic fundamentalists." But the only support Amiour provided for these contentions is that he holds those views, that he has lived in the United States for more than 20 years, and that two of his cousins were killed by Islamic fundamentalists.

Given that Amiour never engaged in any political activity or religious agitation prior to leaving Algeria, and that neither he nor anyone in his immediate family has ever been harmed, it is difficult to see how the immigration courts were wrong—let alone how the evidence *compels* a conclusion that he will more likely than not face harm if he returns. Although Amiour testified that "Islamic fundamentalists" kill and torture individuals who support democracy and who view the West favorably, he submitted no evidence that the Algerian government tolerates or perpetrates such violence. Moreover, country conditions

have improved in recent years, and Amiour has failed to establish that Islamic fundamentalists are currently engaged in any "systematic, pervasive, or organized effort" of any sort.  And although Amiour asks this court to take judicial notice of recent bombings and clashes between the army and militant groups in Algeria, these events do not suggest that Amiour faces any greater danger than any other Algerian.  Indeed, the Algerian government's attempt to subdue militant groups suggests that it does not, in fact, tolerate their actions.

We therefore DENY the petition for review.