**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 7, 2008[*]
Decided July 7, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-2443

| | |
|---|---|
| KANG LAN LI, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | |
| MICHAEL B. MUKASEY, Attorney General of the United States, *Respondent*. | No. A96-401-060 |

**O R D E R**

Facing removal proceedings, Kang Lan Li sought asylum, withholding of removal, and relief under the Convention Against Torture, claiming that she fears persecution in her native China because she is Catholic. The immigration judge denied all forms of relief,

---

[*]On May 1, 2008, we granted the petitioner's unopposed motion to waive oral argument. Therefore, the petition is submitted on the briefs and the record. *See* FED. R. APP. P. 34(f).

finding that Li had failed to show that she would be persecuted if she returned to China. The Board of Immigration Appeals summarily affirmed, and Li petitions for review.

At a removal hearing, Li, who was born in 1985, testified through an interpreter that she was raised Catholic and baptized into the faith in 1993. Li stated that she attended church whenever she could, though her schooling and later her work frequently interfered with her religious practice. She claimed that in December 2003, government officials prevented her from attending mass. Two days later, according to Li, her family's church was bombed, and she began attending a larger church near Changle City. In the spring of 2004, police confiscated some religious pamphlets Li was distributing.

Li also testified that in March 2004, her mother began inviting members of their congregation to the family's home for prayer and Bible study. At one of those sessions, on June 11, 2004, an undercover police officer knocked at the door and warned the congregants that their meeting was illegal. Undeterred, Li's family continued to host religious meetings at their home. Ten days later undercover police broke up one of these meetings and arrested Li along with five other Catholic worshipers. Suspecting Li of being the leader of the religious meetings, the police detained her. Li refused to sign a statement conceding that she was the leader, and in response the police slapped and kicked her and pulled her hair. After Li had spent five days in detention, her mother bribed the police to release her. The police agreed that Li could go free but only on the condition that she report to the police station once a week. Upon her release, Li's mother took her to the hospital where she was treated for some bruising and stayed for two days with a high temperature. Li did not, however, provide to the IJ any medical records or evidence of her treatment. Li further testified that after she returned home, police visited her to ensure that the family no longer hosted religious gatherings. Li said that her mother, worried about her daughter's safety, paid professional smugglers to take Li to the United States. Li left China in July 2004. She claimed that she fears returning to China because the police may be looking for her. Li also voiced concern that she will be punished upon her return to China because she left the country illegally. She introduced no evidence, however, suggesting that her family has been harmed because they continued to practice Catholicism.

After hearing Li's testimony and considering her documentary evidence, the IJ denied all forms of relief. The IJ credited Li's testimony as generally consistent with her application but concluded that her detention, while "unpleasant," did not rise to the level of persecution because it was short-term and not accompanied by "serious physical harm." Because the IJ did not believe Li's fear of returning to China was "reasonably objective," he declined to find that Li had demonstrated that she would likely be persecuted if she returned to China. On appeal, Li argues only that substantial evidence does not support

the IJ's conclusion that she had not shown a well-founded fear of future persecution with respect to her asylum claim.

Where, as here, the BIA summarily affirms the IJ's decision without opinion, we review the IJ's decision to see if it is supported by substantial evidence, *see Soumare v. Mukasey*, 525 F.3d 547, 552 (7th Cir. 2008), and will overturn the IJ's decision "only if the record compels a contrary result," *see Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007). Usually, an alien tries to obtain a presumption of future persecution by demonstrating that she was persecuted in the past. *See Zeqiri v. Mukasey*, No. 07-1103, 2008 WL 2246429, at *5 (7th Cir. June 3, 2008). Li, though, does not challenge the IJ's finding that her detention did not rise to the level of past persecution, instead focusing only on the likelihood that she will be persecuted if she returns to China. Li therefore had to prove that she subjectively fears she will be persecuted if she returns to China and that those fears are objectively reasonable. *See Ahmed v. Gonzales*, 467 F.3d 669, 674 (7th Cir. 2006); *Liu v. Ashcroft*, 380 F.3d 307, 312 (7th Cir. 2004). Li can establish that her fears of persecution are objectively reasonable in two ways. First, she may show that a reasonable person in her shoes would fear persecution. *See Selimi v. Ashcroft*, 360 F.3d 736, 740 (7th Cir. 2004). Alternatively, she may show that there is a pattern or practice of persecuting Catholics in China. *See Kaharudin v. Gonzales*, 500 F.3d 619, 623 (7th Cir. 2007).

Li argues that because the IJ found her testimony generally credible, he erred in concluding that her statements that she feared returning to China did not demonstrate a well-founded fear of future persecution. Although Li's point might have had some force had the IJ rested his determination on the subjective prong of the test, *see Gomes v. Gonzales*, 473 F.3d 746, 755 (7th Cir. 2007), for testimony to be reasonably objective it must be not only credible but persuasive, *see Balogun v. Ashcroft*, 374 F.3d 492, 499 (7th Cir. 2004). The IJ did not doubt that Li genuinely fears returning to China; what he questioned was that a reasonable person would share those fears. On this record, the IJ did not err in concluding that Li's vague fears, in the absence of any specific evidence that police were looking for her or that her family had been harmed based on their Catholic beliefs, were unpersuasive. *See Jiang v. Gonzales*, 474 F.3d 25, 31 (1st Cir. 2007) (in addition to there being no "hard evidence" that police were looking for petitioner, fact that petitioner's parents, who were practicing Catholics, continued to live in China without harassment, supported finding that reasonable person would not fear returning to China); *Firmansjah v. Gonzales*, 424 F.3d 598, 607 (7th Cir. 2005) (absence of evidence of harm to family members undermines an applicant's claim of future persecution based on Catholicism).

Li also contends that "background information in the record supports the objective reasonableness of [her] fear of persecution" and cites to the 2005 State Department

International Religious Freedom Report, which describes a history in some Chinese provinces (not including Fujian, where Li is from) of detaining and beating unofficial Catholic clergy and lay leaders.  To the extent that Li means to argue that the Chinese government has a pattern and practice of persecuting Catholics, her reliance on this report is not enough to show that the IJ erred.  The report states that treatment of unregistered religious groups, including Catholics, varies widely from province to province and that most religious groups are allowed to practice their religion even if unregistered.  Without more, we cannot conclude that the report on its own compels a contrary conclusion.  *See Huang v. Gonzales*, 453 F.3d 942, 946-47 (7th Cir. 2006) (holding that substantial evidence supported IJ's denial of relief where State Department report was inconclusive and petitioner presented no additional corroborating evidence); *Balogun*, 374 F.3d at 506-07 (upholding IJ's adverse credibility determination where IJ rationally construed contradictory State Department reports).

Accordingly, we DENY the petition for review.