# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-2518

MUHAMMAD BILAL TARIQ,

*Petitioner*,

*v.*

PETER D. KEISLER, Acting
Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A78-871-296

_____

ARGUED APRIL 12, 2007—DECIDED OCTOBER 9, 2007

_____

Before RIPPLE, EVANS and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Muhammad Bilal Tariq, a native and citizen of Pakistan, came to the United States with his parents in 1996. Mr. Tariq was thirteen years old at the time and entered the Country on a visitor's visa. He and his parents remained beyond their authorized stay. In 2003, he was served with a notice to appear before an Immigration Judge ("IJ"). Mr. Tariq appeared and conceded his removability. He then applied for asylum and withholding of removal. The IJ denied his asylum application on the ground that it had not been filed within

one year of Mr. Tariq having reached eighteen years of age, as required by 8 U.S.C. § 1158(a)(2)(B). The IJ then denied Mr. Tariq's request for withholding of removal because he had not demonstrated a clear probability that he would be subject to persecution based on some protected characteristic if he were returned to Pakistan. The IJ also denied Mr. Tariq's motion for a continuance pending the outcome of his application for labor certification, on the ground that, even if Mr. Tariq were able to obtain a labor certification, he would deny Mr. Tariq adjustment of status as an exercise of discretion.

Mr. Tariq appealed the decision of the IJ to the Board of Immigration Appeals ("Board" or "BIA") and filed a motion to supplement the record on appeal with evidence he claimed would refute the factual findings of the IJ with respect to his fear of persecution. In a brief per curiam order, the BIA adopted and affirmed the decision of the IJ in its entirety but did not address Mr. Tariq's new evidence.

Mr. Tariq now petitions for review the decision of the BIA denying his applications for asylum and withholding of removal as well as his motion for a continuance and the failure on the part of the BIA to address his motion to supplement the record on appeal. For the reasons set forth in this opinion, we deny Mr. Tariq's petition for review.

# I

## BACKGROUND

Mr. Tariq was born in Pakistan, but lived most of his childhood in the United Arab Emirates ("UAE"). When his

father's business ventures in the UAE failed, the family returned to Pakistan to escape his creditors. One of these creditors, a loan shark identified as "Mustafa," followed the family to Pakistan, where he allegedly threatened Mr. Tariq's father and the rest of the family. The family then fled to the United States, where, on December 14, 1996, they entered with nonimmigrant visitor's visas. Mr. Tariq was thirteen at the time he entered the United States.

In March 2003, in response to new regulations issued by the Attorney General regarding the National Security Entry-Exit Registration System ("NSEERS"), Mr. Tariq registered with the Department of Homeland Security ("DHS"). Because Mr. Tariq had overstayed his visitor's visa, removal proceedings were initiated, and, on April 7, 2003, Mr. Tariq received a notice to appear before an IJ. At his initial appearance on April 30, 2003, Mr. Tariq conceded removability but informed the IJ that he was filing for labor certification and that he believed he was entitled to apply for adjustment of status under the grandfather provision of § 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i), based on an application for labor certification filed by his mother before April 30, 2001.[1] The IJ then advised Mr. Tariq that he should

---

[1] The grandfather provision permits aliens otherwise ineligible for adjustment of status under 8 U.S.C. § 1255(a) or (c) to apply for adjustment of status if they were the beneficiary of either a petition for classification under 8 U.S.C. § 1154 or an application for labor certification filed before April 30, 2001. *See* 8 U.S.C. § 1255(i)(1)(B). Because Mr. Tariq was a minor at the time his mother applied for labor certification, he is con-
(continued...)

bring to the next hearing information concerning his eligibility for adjustment of status, as well as any application for asylum or other relief.

On October 1, 2003, Mr. Tariq submitted his application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT") to the IJ. Mr. Tariq's employer filed a labor certification application for Mr. Tariq on July 9, 2004.[2] A hearing was scheduled for March 9, 2005 to consider Mr. Tariq's requests for asylum, withholding of removal and CAT relief, as well as a motion for a continuance pending the outcome of his application for labor certification.

At the hearing, Mr. Tariq and his mother both testified in support of his application for asylum and withholding of removal. Mr. Tariq first explained that the delay in his asylum application had been the result of his parents' divorce and volatile relationship, which had caused him to assume some responsibility for the care of his younger siblings. In support of the merits of his asylum application, he testified that the family had been forced to leave the UAE when his father's businesses had failed in order to escape Mustafa. Mr. Tariq testified that Mustafa had followed the family to Pakistan and had threatened Mr. Tariq's father as well as the rest of the family. He further testified that the police had come to investigate

---

[1] (...continued)
sidered a beneficiary of her application. *See id.*; 8 C.F.R. § 245.10(a)(1)(B).

[2] An application for labor certification also had been filed by Mr. Tariq's employer sometime in 2003, but it is unclear from the record what happened with this application.

the threats, but they did nothing to stop them. According to Mr. Tariq, this prompted the family to leave Pakistan out of concern for their safety. However, Mr. Tariq admitted that he was not aware of any attempts by Mustafa to contact his family after they came to the United States. He also stated that he did not know of Mustafa's present whereabouts or whether he was still alive at that time.

Apart from his fear of harm at the hands of Mustafa, Mr. Tariq testified that he feared persecution because he could not speak the language, and he did not regularly practice his Muslim faith. Mr. Tariq asserted that, as a consequence of these factors, he would be persecuted because people would attribute Western political opinions to him.

Next, Mr. Tariq's mother testified. She corroborated Mr. Tariq's testimony that the family had left the UAE because of debts owed to Mustafa. She also stated that Mustafa had followed the family to Pakistan. However, she did not testify that the family actually encountered Mustafa in Pakistan, nor did she state that the police were called in response to any threats.

Mr. Tariq also offered an affidavit from his father in support of his application for asylum, which corroborated much of Mr. Tariq's testimony. However, Mr. Tariq's father did not appear as a witness. In response to the affidavit, the Government proffered a printout of a Nonimmigrant Information System ("NIIS") report[3] which suggested

_____

[3] The NIIS was a database of records tracking the arrival and departure of individuals as nonimmigrant visitors. *See* 68 Fed. Reg. 5,048 (Jan. 31, 2003). Since early in 2005, the NIIS has been

(continued...)

that Mr. Tariq's father, or someone with the same name and birthdate, had traveled to the United States on a visa issued in Islamabad in 2000. Additionally, the Government proffered the asylum application of Mr. Tariq's father, which did not mention the debt or fear of Mustafa as a basis for his application.

The IJ denied Mr. Tariq's asylum claim because Mr. Tariq had not filed his asylum application within one year of reaching the age of majority, and he had not established extraordinary circumstances that would excuse his failure to apply in timely fashion. Therefore, the IJ continued, Mr. Tariq was required to satisfy the more stringent standards for withholding of removal. The IJ determined that Mr. Tariq had not established a clear probability of persecution necessary to be entitled to that form of relief. First, the IJ concluded, Mr. Tariq had not established that his fear of harm was based on any of the statutorily protected grounds. The IJ concluded that any threat posed by Mustafa was on account of a personal dispute between Mustafa and Mr. Tariq's father, not on account of his membership in any identifiable social group. The IJ noted that we have held that personal disputes cannot serve as the basis for asylum or withholding of

---

[3] (...continued)
integrated into the Treasury Enforcement Communications System maintained by the United States Customs and Border Protection. *See* Elizabeth M. Grieco, Office of Immigration Statistics, Estimates of the Nonimmigrant Population in the United States: 2004, at 1 n.2 (2006); *see also* United States Department of Homeland Security, Privacy Impact Assessment Update of the United States Visitor and Immigrant Status Indicator Technology Program (US-VISIT), at 3 n.3 (2007).

removal. The IJ further concluded that Mr. Tariq had presented no evidence that he faced a clear probability of persecution on account of imputed political opinions owing to his Western upbringing, which claim, the IJ stated, was supported by no more than speculation.

Additionally, the IJ noted that Mr. Tariq's father had not mentioned Mustafa in his own application for asylum. This, the IJ concluded, weakened Mr. Tariq's claimed fear of persecution at the hands of Mustafa. The IJ also added that the Government's NIIS reports indicating that somebody matching the biographical description of Mr. Tariq's father had traveled to Pakistan undercut the credibility of his father's affidavit. In any event, the IJ added, Mr. Tariq had failed to demonstrate a clear probability that the government of Pakistan would be unable to protect Mr. Tariq from Mustafa or that there was any connection between Mustafa and the government of Pakistan.

The IJ also denied Mr. Tariq CAT relief, on the ground that he had not suffered past torture and that it was not more likely than not that he would suffer future torture.

The IJ then denied Mr. Tariq's request for a continuance pending the outcome of his application for labor certification. Recognizing that Mr. Tariq was entitled to the benefits of § 245(i), the IJ nevertheless concluded that, even if Mr. Tariq were able to obtain labor certification and, as a result, a visa, he would deny Mr. Tariq adjustment of status as a matter of discretion. Among the reasons given by the IJ to support this decision, the IJ pointed to "the weak and tenuous basis for [Mr. Tariq's] claim of asylum and withholding of removal eligibility," which claims the IJ had determined were filed "solely for purposes of delay." A.R. at 111-12. The IJ also pointed to

Mr. Tariq's continued illegal presence in the United States and failure to come forward to seek asylum or adjustment of status until the Attorney General's changes to NSEERS required his registration.

Mr. Tariq appealed this decision to the BIA. Along with his appeal, he filed a motion to supplement the record on appeal. The additional evidence Mr. Tariq sought to introduce included an affidavit from his father explaining he had not mentioned Mustafa in his initial asylum application because it had been filed hastily and therefore did not reflect all of the reasons for fearing persecution if returned to Pakistan. Additionally, he stated that, after arriving in the United States, he never had returned to Pakistan and that the NIIS report must concern another individual.

The BIA adopted and affirmed the IJ's decision. In its decision, the BIA did not address Mr. Tariq's motion to supplement.[4]

# II

## DISCUSSION

In his petition, Mr. Tariq asks that we review the decision of the BIA upholding the IJ's denial of his applications for asylum and withholding of removal. He also submits that the BIA erred when it failed to address his

---

[4] Mr. Tariq also moved for reconsideration of the BIA's decision on the ground that the BIA had failed to address the evidence he had presented in his motion to supplement the record. The BIA denied Mr. Tariq's motion to reconsider. He does not appeal that decision.

motion to supplement the record on appeal when it adopted the decision of the IJ. Mr. Tariq further asks that we review the denial of his motion for a continuance. "Where, as here, the BIA summarily adopts the IJ's decision, this Court reviews the IJ's factual findings and reasoning as though they were the Board's." *Boci v. Gonzales*, 473 F.3d 762, 765-66 (7th Cir. 2007).

## A.

We now turn to Mr. Tariq's application for asylum. The IJ concluded that Mr. Tariq was ineligible for asylum because he had failed to file his claim within one year of turning eighteen. Mr. Tariq contends that the IJ should have excused the delay in filing because he had demonstrated changed circumstances that materially affected his eligibility for asylum or extraordinary circumstances related to the filing itself.

Section 1158(a)(2)(B) provides that an applicant for asylum must demonstrate by clear and convincing evidence that he has filed the application within one year of arriving in the United States.[5] However, the IJ may consider an application for asylum even if the applicant fails to prove he filed within one year of admission

> if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances

---

[5] Because Mr. Tariq was under eighteen when he arrived in the United States, the IJ determined that the one-year period did not commence until his eighteenth birthday.

relating to the delay in filing an application within [one year of arrival].

8 U.S.C. § 1158(a)(2)(D). We generally lack jurisdiction to review the IJ's determination in this regard, *see id.* § 1158(a)(3); however, we may review the IJ's decision with respect to questions of law, *see* 8 U.S.C. § 1252(a)(2)(D); *Mabasa v. Gonzales*, 455 F.3d 740, 744 (7th Cir. 2006).

Mr. Tariq points to two grounds that he contends constitute legal error in the IJ's application of § 1158(a)(2)(D). First, he submits that the IJ incorrectly applied § 1158(a)(2)(D) by focusing on whether the asserted changed circumstances had affected his claim as opposed to his eligibility for asylum. Although Mr. Tariq does not explain precisely the distinction he believes the IJ drew, the gravamen of this contention is that § 1158(a)(2)(D) directs the IJ's inquiry regarding changed circumstances to whether the alleged changes affected his eligibility for asylum. Second, he asserts that the IJ erred by requiring him to demonstrate "exceptional" as opposed to "extraordinary" circumstances relating to his delay in applying for asylum.

Taking the first point, in applying § 1158(a)(2)(D), the IJ noted that the one-year deadline may be waived if the applicant "demonstrates a change in circumstances that materially [a]ffect the asylum claim itself." A.R. at 97. Although the IJ did not recite verbatim the language in § 1158(a)(2)(D), this passage reveals that the IJ understood that the changed circumstances to which the statute refers are those that affect the applicant's eligibility for asylum.

With respect to the second contention, the record taken as a whole demonstrates its lack of merit. Although, on

one occasion, the IJ did refer to Mr. Tariq's burden in terms of "exceptional circumstances," the IJ then proceeded to identify the burden in terms of "extraordinary circumstances." A.R. at 97. Further, the IJ's ultimate conclusion was that Mr. Tariq had "failed to fall within the *extraordinary circumstances* exception to the one year filing deadline." *Id.* at 98 (emphasis added).

In the absence of legal error in the IJ's application of § 1158(a)(2)(D), we are without jurisdiction to review further his determination that Mr. Tariq's application for asylum had not been filed in a timely fashion.

**B.**

Mr. Tariq next contends that the IJ erred when he denied the application for withholding of removal. In order to establish an eligibility for withholding of removal, an applicant must demonstrate a clear probability of persecution on account of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Mabasa*, 455 F.3d at 745. To establish a clear probability of persecution, the applicant "must demonstrate that 'it is more likely than not that [he] would be subject to persecution' in the country to which he would be returned." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (quoting *INS v. Stevic*, 467 U.S. 407, 429-30 (1984)). "The acts of private citizens do not constitute persecution unless the government is complicit in those acts or is unable or unwilling to take steps to prevent them." *Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006). We review the IJ's decision denying withholding of removal under the substantial evidence standard. *Mabasa*, 455 F.3d at 745. We shall not reverse the decision of the IJ

unless Mr. Tariq can demonstrate "that 'the evidence not only *supports* that conclusion, but *compels* it.' " *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)).

Mr. Tariq has not met his burden. Mr. Tariq presented two grounds for withholding of removal: (1) his fear of Mustafa and (2) his fear of discrimination because of political opinions attributed to him on account of his Western upbringing. The IJ denied withholding of removal on the first ground because Mr. Tariq had failed to demonstrate that any harm at the hands of Mustafa would be on account of Mr. Tariq's membership in a particular social group. The IJ denied withholding of removal on the second ground because Mr. Tariq had presented no evidence that his Western upbringing would cause individuals in Pakistan to attribute political opinions to him. With respect to both grounds for withholding of removal, the IJ also held that Mr. Tariq had failed to demonstrate that the government of Pakistan was unwilling or unable to protect him.

Mr. Tariq advances no argument to refute these conclusions. Moreover, the record supports the IJ's findings. Accordingly, we must hold that his decision to deny Mr. Tariq withholding of removal was supported by substantial evidence.

## C.

Mr. Tariq asserts that the BIA erred in failing to address his motion to supplement the record on appeal. The Government concedes that it was error for the BIA to fail to address this motion. However, we shall not reverse the decision of the BIA if an error is harmless. *Cf. Pronsivakulchai v. Gonzales*, 461 F.3d 903, 907 (7th Cir. 2006) (holding that to prevail on a claim that an immigration

hearing was procedurally insufficient, the petitioner must demonstrate prejudice).

Before the IJ, the Government had introduced two pieces of evidence to impeach the affidavit testimony of Mr. Tariq's father with respect to the threat posed by Mustafa. First, the Government introduced a NIIS report showing that someone with biographical information similar to Mr. Tariq's father had entered the United States in 2000 on a visa issued in Pakistan. This information indicated that his father had returned to Pakistan at some point prior to that reentry despite the threat posed by Mustafa. The second piece of evidence was Mr. Tariq's father's application for asylum, which made no mention of Mustafa. This documentation cast doubt on the assertion in the affidavit of Mr. Tariq's father that Mustafa would harm Mr. Tariq if he were forced to return to Pakistan. In an attempt to counter the Government's submission, Mr. Tariq sought to supplement the record.

As we have discussed earlier, the primary reasons given by the IJ for denying Mr. Tariq withholding of removal with respect to the threat from Mustafa were Mr. Tariq's failure to establish that any harm would be on account of his membership in a particular social group and his failure to demonstrate that the government of Pakistan was unable or unwilling to protect him. In the IJ's analysis, the Government's evidence was relegated to a footnote indicating that this evidence undercut the credibility of Mr. Tariq's father regarding the likelihood of persecution at the hands of Mustafa. This credibility determination was wholly unrelated to the IJ's determination that Mr. Tariq had not demonstrated that any persecution would be on account of his membership in a particular social group or that the government of Pakistan had the willingness and capacity to protect him.

We must conclude, therefore, that, even if the BIA had permitted Mr. Tariq to supplement the record and had credited fully his supplemental evidence, Mr. Tariq still would not have established that any persecution would be on account of his membership in a particular social group or that the government of Pakistan would be unable or unwilling to protect him. We therefore must conclude that any error on the part of the BIA in failing to consider Mr. Tariq's supplemental evidence was harmless.

### D.

Mr. Tariq further asks that we review the IJ's decision denying his motion for a continuance. In *Ali v. Gonzales*, ___ F.3d ___, Nos. 06-3240 & 06-3879, 2007 WL 2684825 (7th Cir. Sept. 14, 2007), the court held that we have no jurisdiction over this matter.

### Conclusion

For the reasons set forth in this opinion, we conclude that the IJ's denial of Mr. Tariq's application for asylum and withholding of removal was supported by substantial evidence. We also hold that any error on the part of the BIA in its treatment of Mr. Tariq's motion to supplement the record on appeal was harmless. Finally, we have no jurisdiction to review the denial of Mr. Tariq's motion for a continuance.

Accordingly, we must deny Mr. Tariq's petition for review.

PETITION DENIED;
DECISION AFFIRMED

No. 06-2518                                                          15

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
