NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued March 5, 2008
Decided April 30, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-1677

| | |
|---|---|
| SAMUEL NII ADDO WILSON, <br> *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals |
| *v.* | No. A76 773 335 |
| MICHAEL B. MUKASEY, Attorney General of the United States, <br> *Respondent*. | |

**O R D E R**

Samuel Nii Abdul Wilson, a citizen and native of Ghana, entered the United States without inspection in 1994 and has lived in this country ever since.  In 2001 the Immigration and Naturalization Service (INS) began removal proceedings against him.  Wilson conceded that he was subject to removal, but presented an application for withholding of removal and protection under the Convention Against Torture (CAT).  An immigration judge denied Wilson's application, concluding that he had failed to

establish that he was at risk of persecution if returned to Ghana or that he is a member of a cognizable social group. The IJ ordered that Wilson be granted voluntary departure. The Board of Immigration Appeals affirmed the decision. Wilson petitions for review, arguing that the BIA erred in denying his application because he fears persecution on account of his ties to his family which, according to him, constitutes a social group. We deny the petition for review.

In December 2001, the INS issued a Notice to Appear, charging that Wilson was subject to removal pursuant to INA § 212(a)(6)(A)(I) as an alien present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(I). At the hearing, Wilson, through counsel, conceded removability but asked for withholding of removal and relief under the CAT.

Wilson testified that he had been a member of the Ga tribe and lived in the southeastern part of Ghana, where his father was a local tribal chief, and his father was responsible for buying and selling land, including the land near a gravel and limestone quarry. His father, Wilson said, created enemies by repeatedly selling the rights to the same pieces of land to different members of the Nanumba tribe, who were squatters living near and around the quarry. In addition, Wilson testified that his father did not disclose all of the land sales he made and kept money that should have been shared with the Ga Tribe. Wilson said that, in revenge, two members of the Nanumba tribe hired gangsters called "Macho Men" who in late 1992 burned down his family's home. After settling the dispute, his father continued to resell the same land and engender hatred against his family, culminating in the murder of his father in October 1994. Wilson left Ghana for the United States seven months before his father's death, but testified that he learned of the murder from an article in a Ghanaian newspaper. Wilson did not keep copies of the newspaper articles, but he claimed that he read that members of the Nanumba tribe hired "Macho Men" who beat his father, slit his throat, placed a tire filled with gasoline around his neck, and set him on fire.

Wilson testified that he was afraid to return to Ghana because, based on conversations he had with unnamed people there, members of his own tribe expect him to revenge his father's death. He fears that if he refuses to do so, his own tribe members will kill him. He also maintains that the Ga and Nanumba tribes have reconciled and, in addition to fearing his own tribe, he fears that members of the Nanumba tribe who were cheated by his father might take revenge against him if he were to return to

Ghana.  Wilson said that he would be recognized if he returned to Ghana because he had accompanied his father on some of his land sales.  He believes the police are impotent and the courts too corrupt to provide him any protection.

To support his claim, Wilson offered a 2003 U.S. Department of State country report on human rights practices in Ghana; and a United Nations report on minorities in Ghana.  Both reports listed the presence of the Ga Tribe in southeast Ghana and the existence of the Nanumba tribe and mention land disputes, chieftaincy disputes, and mob vigilante justice, including specific mention of the "Macho Men."  Nonetheless, the U.N. report concluded that the "birth of the fourth Republic has led to a relatively liberalized political and human rights atmosphere in Ghana," and the State Department report noted that the government generally respects "the human rights of its citizens."

In July 2006 the IJ issued a written opinion denying Wilson's application.  The IJ stated that although Wilson's testimony was credible, Wilson failed to make a claim based on ethnicity, political opinion, or membership in a particular social group.  The IJ reasoned that Wilson's father was murdered because he swindled people out of land, not because he was a member of a cognizable group.  And in any event, Wilson failed to provide any evidence to corroborate his claim that he was under threat of mistreatment for refusing to avenge his father's death.  Finally, the IJ denied relief under the CAT, concluding that Wilson had not shown that he faces a likelihood of being tortured by the government of Ghana or that the government has any interest in mistreating him.

Wilson appealed to the BIA, which denied his appeal, finding that Wilson had failed to "articulate a nexus between his fear of return and a protected ground in the Act."  The BIA held that any fear of retribution Wilson might have was based on personal matters, not on his membership in a social group, and found that Wilson was unlikely to be in danger because the murder of his father occurred many years ago.  The BIA also agreed with the IJ that Wilson failed to show that he was more likely than not to be subject to torture "by or at the acquiescence of any government official if returned to Ghana."

Wilson argues in this court that the BIA erred in refusing to grant withholding of removal and that he should be granted relief because he fears persecution on the basis of his membership in a social group.  But he now identifies his family, not his tribe, as the relevant social group.  Specifically, he argues that he will face persecution at the

hands of the Nanumba because of his status as "his father's son." Wilson also contends that he was not required to corroborate his claims because the IJ found his testimony credible, and in any event, he argues that the State Department report and U.N. report provide sufficient corroboration. Finally, he argues that he qualifies for relief under the CAT because the State Department report supports his contention that Ghana will not protect him from the Macho Men.

When the BIA issues its own opinion, as it did here, as opposed to adopting or merely supplementing the opinion of the IJ, we review only the opinion of the BIA. *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). We review Wilson's claims for withholding of removal and relief under the CAT using the substantial evidence standard, and will uphold the BIA's decision if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *See id.* at 660 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We review the BIA's legal conclusions de novo, *Feto v. Gonzales*, 433 F.3d 907, 911 (7th Cir. 2006), and will grant the petition only if the record "compels" the conclusion that the petitioner is entitled to the relief sought, *Tarraf v. Gonzales*, 495 F.3d 525, 532 (7th Cir. 2007).

The petitioner bears the burden of demonstrating that he will likely face persecution if removed. *Id.* To meet that burden and establish eligibility for withholding of removal, Wilson must "demonstrate a clear probability of persecution on account of his 'race, religion, nationality, membership in a particular social group, or political opinion.'" *See Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007) (quoting 8 U.S.C. § 1231(b)(3)(A)). To show a "clear probability" of persecution, Wilson must establish that he would "more likely than not" face persecution if returned to Ghana, a more stringent test than the one for establishing asylum. *See Pavlyk v. Gonzales*, 469 F.3d 1082, 1087 (7th Cir. 2006). Furthermore, "[t]he acts of private citizens do not constitute persecution unless the government is complicit in those acts or unwilling to take steps to prevent them." *Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006). For relief under the CAT, Wilson must establish that it is more likely than not that he will be tortured upon his removal to Ghana. *See* 8 C.F.R. § 208.16(c)(2); *see also Binrashed v. Gonzales*, 502 F.3d 666, 674 (7th Cir. 2007).

Wilson first argues that his family constitutes a social group and that he will face persecution based on his status as "his father's son." As the government points out, this argument is waived because he did not argue to either the IJ or the BIA that his family

was the social group facing persecution.  *See Ambati v. Reno*, 233 F.3d 1054, 1062 (7th Cir. 2000); *Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir. 1998).  Although Wilson contended in his petition before the BIA that he is in particular danger because he is "a chief's son," he specifically identified his tribe, not his family, as the social group targeted for persecution.  Because Wilson failed to exhaust the argument that he would be persecuted based on his status as his "father's son" on appeal to the BIA, we cannot review this claim.  *Tarraf*, 495 F.3d at 535.

In addition, as the BIA pointed out, Wilson's fears arise from personal matters, not his membership in a social group.  We have repeatedly held that a personal dispute cannot give rise to a claim of asylum, *see Wang v. Gonzales*, 445 F.3d 993, 998-99 (7th Cir. 2006) (collecting cases), and thus it could not support the more stringent requirements for withholding of removal, *Boci v. Gonzales*, 473 F.3d 762, 767 (7th Cir. 2007).  Wilson conceded that his father was killed because he cheated people out of land.  Any retribution that he fears from his own tribe or from the Nanumba tribe is based on that fact, not his membership in any social group.  He presented no evidence that his family as a group has been or is a particular target of persecution, or that he would be targeted merely because he is a member of the Wilson family.  Wilson never contended that his mother was targeted by the Nanumba or by the Ga tribe before she died, and Wilson admits that his fears stem from having accompanied his father on some of the land transactions.  Therefore, substantial evidence supports the BIA's finding that Wilson's fears of persecution arise from a personal matter, rather than his status as a member of a social group.

Furthermore, there is sufficient evidence to support the BIA's finding that it is unlikely Wilson would face persecution or "be subjected to torture by or at the acquiescence of any government official if returned to Ghana" based on a killing that occurred 13 years ago.  Wilson has no personal knowledge of threats against him.  His fear of retribution, instead, is based on second-hand threats reported to him from unnamed people in Ghana shortly after the death of his father.  Although the State Department and U.N. reports mention the existence of Macho Men and land disputes in Ghana, they do not lend support to Wilson's allegations that he would be killed for failing to avenge his father's death, nor do they support his conjecture that the Nanumba tribe would seek revenge after such a long passage of time.  Wilson speculates that he would not be safe in any part of Ghana, though he provides no evidence that Macho Men outside his tribal area even know about or remember his

father or Wilson's involvement in his father's dealings. In addition, Wilson provides no evidence to support his claim that Ghana would fail to protect him or would acquiesce to his mistreatment.

Wilson's next argument—that "corroborative evidence was not necessary since the IJ found that Wilson was a credible witness"—misunderstands the purpose of the corroboration the IJ sought. The IJ did not seek corroboration for Wilson's testimony; rather, he sought additional evidence to support Wilson's claim beyond Wilson's own speculation. Wilson left Ghana before his father's murder and could testify only to reading about his father's death and talking to unnamed people in Ghana soon after the murder. He had no further evidence of any danger to him. Merely finding Wilson credible does not mean that Wilson satisfied his burden to prove that he would be persecuted if he returned to Ghana. Thus the BIA's finding that Wilson had "not sufficiently demonstrated that his life or freedom would be threatened on account of any protected ground if returned to Ghana" is supported by substantial evidence. *See Tariq* 505 F.3d at 654, 657.

Because substantial evidence supports the BIA's decision, we DENY the petition.