NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 10, 2008
Decided June 17, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 07-2687

| | |
|---|---|
| LAFRAN M. HUSSAIN,<br>*Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A98-528-045 |
| MICHAEL B. MUKASEY,<br>*Respondent*. | |

**O R D E R**

Lafran Hussain applied for asylum in December 2004, and a month later the Department of Homeland Security initiated removal proceedings against him. Hussain conceded removability but sought withholding of removal and protection under the Convention Against Torture (CAT). The Immigration Judge (IJ) denied his applications, and the Board of Immigration Appeals (BIA) affirmed. Hussain now petitions for review. Because the IJ's decision was supported by substantial evidence, we DENY his petition.

Hussain, a 28-year-old native and citizen of Sri Lanka, allegedly entered the United States on December 20, 2003. On December 16, 2004, he applied for asylum, claiming

persecution on account of political opinion. After the application was rejected as untimely, Hussain was charged with removability because he lacked legal status. Hussain admitted removability but challenged the asylum denial and applied for withholding of removal and protection under CAT. In his asylum application Hussain recounted the following events, which differ in several respects from his testimony at the removal hearing.

In a written statement attached to his asylum application, Hussain stated that he had been a member of the organizing committee for the United National Party (UNP) and an "ardent supporter" of Imtiaz Bakeer Markar, the mass communications minister. Following the President's removal of Markar from his post in 2003, Hussain claimed that the opposition party began to seek revenge on those who supported Markar. He received threatening calls and, on one occasion, was taken into police custody "for no reason." In the prison cell, Hussain said, he was beaten and held for two days. After his release, Hussain was hospitalized for two weeks and then went into hiding at his cousin's house, over 100 miles from his home town.

At the removal hearing, Hussain testified that he arrived in the United States on December 20, 2003. He claimed that, using a friend's passport, he had flown through Sri Lanka, Bangkok, and Japan on his way to Los Angeles. The ticket stub he provided as proof, however, did not include a stop in Japan. And Hussain did not provide the passport or any other documents to support his contention that he entered the country on December 20, 2003.

Hussain also submitted several documents showing that he had been summoned to court shortly before the threatening calls and police harassment began. He explained that he was summoned in August 2003 to testify as a witness concerning the murder of a UNP supporter. But he was unable to comply with the summons because the trial date coincided with his two days in police custody. A warrant was then issued for his arrest because of his failure to appear. Hussain claimed that he had not attached the documents to his asylum application because he did not realize that they were needed. However, he failed to even mention anything about the summons or arrest warrant in his asylum application. And, at the removal hearing, he stated that the murder and summons is "how all these problems started for me." Further, he testified that he "strongly suspect[ed]" that the harassment he endured, including the two-day beating while in police custody, stemmed from a desire to prevent him from testifying at the murder trial.

Hussain then testified about his involvement in Sri Lankan politics. He said that he had supported the UNP since 1999, was involved in the party's youth wing, spoke at political rallies on behalf of the party, and openly supported Markar as a candidate in the 2001 and 2002 parliamentary elections. He testified that on November 4, 2003, the President

of Sri Lanka—a member of the opposing party—fired Markar from his post as communications minister. Hussain explained that although the Sri Lankan Prime Minister was a member of the UNP, the President controlled the local police through the ministry of defense and internal affairs. Contrary to Hussain's assertion, though, the U.S. Department of State's report on Sri Lanka states that neither the minister of defense nor the minister of internal affairs controls the police. And despite his termination as communications minister, Markar remained a representative in the Sri Lankan parliament.

After receiving numerous threats, Hussain claimed that the police arrested him on November 17 "without any reason." At the police station the officers warned him not to support Markar or the UNP and punched him in the face. Two days later, Hussain was admitted to a local hospital for "about a week," where he was treated for a dislocated arm and swollen jaw. He then hid at a friend of his brother-in-law's and, about 25 days later, fled the country. This testimony, however, contradicts Hussain's asylum application, which states that he was hospitalized for "two weeks" rather than one and hid at his cousin's house.

After the hearing, the IJ denied Hussain's asylum application because he failed to show by clear and convincing evidence that it was filed within one year of his arrival in the United States. In so finding, the IJ raised doubts about the accuracy of Hussain's alleged arrival date. And, even assuming the application had been timely filed, the IJ held that Hussain failed to meet his burden of proof with respect to withholding of removal. The IJ reasoned that the differences between Hussain's asylum application and his "inherently irrational" testimony raised significant doubts about his credibility. He also determined that Hussain had failed to establish a well-founded fear of future persecution. Finally, as to the CAT claim, the IJ concluded that Hussain had not shown that he was more likely than not to be tortured upon removal to Sri Lanka. The BIA affirmed the IJ's decision and dismissed Hussain's appeal. It first determined that Hussain did not apply for asylum within one year of his arrival in the United States. Next, the BIA held that the record supported the IJ's finding that Hussain lacked credibility. In particular, the BIA found that Hussain's varying stories failed to establish a connection between the beating and any protected ground. Finally, the BIA held that because Hussain could not give a credible explanation for why he would fear future persecution in Sri Lanka, he could not qualify for either withholding of removal or protection under CAT.

In his petition for review, Hussain first argues that the IJ erred in denying his claim for asylum. The Immigration and Nationality Act (INA) gives the Attorney General the discretion to grant asylum to an alien who qualifies as a refugee, 8 U.S.C. § 1101(a)(42)(A), and requires that an asylum application be filed within one year of the alien's arrival in the United States, 8 U.S.C. § 1158(a)(2)(B). The alien must prove by clear and convincing

evidence that he timely filed his application. *Id.* However, the INA also provides that no court "shall have jurisdiction to review any determination of the Attorney General under [8 U.S.C. § 1158(a)(2)]." *Id.* § 1158(a)(3); *see Tariq v. Keisler*, 505 F.3d 650, 655-56 (7th Cir. 2007). We may only review the determination where it concerns a question of law. 8 U.S.C. § 1252(a)(2)(D); *Tariq*, 505 F.3d at 656. Here, Hussain does not argue that the IJ made a legal error in the application of 8 U.S.C. § 1158(a)(2). We are therefore without jurisdiction to review the BIA's conclusion that Hussain's asylum application had not been filed within one year of his arrival. *See* 8 U.S.C. § 1158(a)(3); *see also Tariq*, 505 F.3d at 656; *Mabasa v. Gonzales*, 455 F.3d 740, 744 (7th Cir. 2006).

Hussain next argues that the IJ erred in denying his claim for withholding of removal. Where, as here, the BIA issues its own opinion rather than adopting the IJ's decision, our "task is to review only the opinion of the BIA." *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). To reverse the BIA's decision, Hussain must demonstrate that the evidence compels a contrary result. *Irasoc v. Mukasey*, 522 F.3d 727, 729 (7th Cir. 2008).

To establish eligibility for withholding of removal, an applicant must show a "clear probability" of persecution on account of his race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *see Irasoc*, 522 F.3d at 729-30; *Mabasa*, 455 F.3d at 745. We afford an IJ's credibility determination substantial deference and will only overturn it under extraordinary circumstances. *See Shmyhelskyy v. Gonzales*, 477 F.3d 474, 479 (7th Cir. 2007); *Giday v. Gonzales*, 434 F.3d 543, 550 (7th Cir. 2006).[1] But we require that an IJ's credibility findings be made "with reference to specific, cogent reasons that bear a legitimate nexus to the finding, and that go to the heart of an applicant's claim, rather than to a minor, irrelevant aspect of the story." *Adekpe v. Gonzales*, 480 F.3d 525, 530 (7th Cir. 2007).

The IJ's decision to discredit Hussain was based on substantial evidence that went to the heart of his claim. Hussain's testimony at the removal hearing contradicted his asylum application in several ways. Hussain testified at the hearing that he had been in the hospital for about a week and soon thereafter hid at his cousin's house, yet his asylum application stated that he had been in the hospital for two weeks and then stayed with a friend of his brother-in-law, not his cousin. Hussain's testimony at the hearing concerning the timing of his asylum application also directly contradicted the plane ticket he provided to the IJ.

---

[1] The credibility analysis in this case is unaffected by the passage of the REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231, because Hussain filed his asylum petition before Congress passed the statute. *See Shmyhelskyy v. Gonzales*, 477 F.3d 474, 479 n.1 (7th Cir. 2007).

More importantly, Hussain's application did not mention the outstanding arrest warrant or anything else having to do with the murder trial. This omission is especially significant because the warrant was "the central basis," for Hussain's fear of returning to Sri Lanka, *see, e.g.*, *Shmyhelskyy*, 477 F.3d at 480-81 (finding that petitioner's omission supports IJ's adverse credibility determination); *Tarraf v. Gonzales*, 495 F.3d 525, 532-34 (7th Cir. 2007) (upholding adverse credibility determination because of substantive inconsistencies between petitioner's earlier statements and testimony at hearing); *Korniejew v. Ashcroft*, 371 F.3d 377, 386 (7th Cir. 2004) (holding that petitioner's inability to explain discrepancy between her testimony and asylum application supports adverse credibility determination). Finally, Hussain's testimony at the hearing concerning the political situation in Sri Lanka was inconsistent with the U.S. Department of State's report on the country. Hussain failed to explain these inconsistencies and presented no corroborating evidence for his claims. Therefore sufficient evidence supports the IJ's conclusion that Hussain was not credible.

Even assuming Hussain was credible, there is no connection between the persecution (or well-founded fear of future persecution) and any of the protected grounds. In his asylum application Hussain claimed that he was harassed by the police for his political association with UNP and taken into police custody "for no reason." But at the hearing he conceded that the murder and subsequent summons were "how all these problems started for me." And he repeatedly testified that he feared returning to Sri Lanka because of the outstanding arrest warrant in his name. Because Hussain's role as an eyewitness in the murder trial has no connection to any of the protected grounds listed in 8 U.S.C. § 1231(b)(3)(A), he cannot establish either past persecution or a well-founded fear of future persecution on account of a protected ground. *See, e.g.*, *Djouma v. Gonzales*, 429 F.3d 685, 688 (7th Cir. 2005).

Finally, Hussain argues that the IJ erred in denying his claim for CAT relief. This argument, however, was not presented to the BIA and therefore was not preserved in the administrative process. *See Korsunskiy v. Gonzales*, 461 F.3d 847, 849 (7th Cir. 2006); *Tarraf*, 495 F.3d at 535-36.

Accordingly, we DENY Hussain's petition for review.