**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-1435 & 16-3180
_____

ASHRAF MOHAMED,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                    Respondent
_____

Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A088-447-053)
Immigration Judge: Honorable Judge Alberto J. Riefkohl
_____

Argued March 30, 2017

Before:  VANASKIE, KRAUSE, and RESTREPO, *Circuit Judges*

(Opinion filed:  August 24, 2017)

Clifton S. Elgarten
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004

James E. Kellett
Jared A. Levine   **[ARGUED]**
Crowell & Moring
590 Madison Avenue
20th Floor
New York, NY 10022

Vahe Mesropyan

Crowell & Moring
3 Park Plaza
20th Floor
Irvine, CA 92614
Counsel for Petitioner

Nancy E. Friedman,
       Senior Litigation Counsel
Justin Markel,
       Senior Litigation Counsel
Benjamin C. Mizer,
       Principal Deputy Assistant Attorney General
Gregory A. Pennington, Jr.   **[ARGUED]**
Benjamin Zeitlin
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
Counsel for Respondent

O P I N I O N*

KRAUSE, *Circuit Judge*

Ashraf Mohamed, a native and citizen of Guyana, petitions for review of decisions by the Board of Immigration Appeals ordering his removal and denying his motion to reopen proceedings.  Although we either lack jurisdiction or find no basis to grant relief on the issues raised in the petition for review of the removal order, we conclude the

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Board erred in its analysis of the motion to reopen, so we will remand for further proceedings on that motion.

## I.  Background

Mohamed was born in a small, religious community in Guyana which, he contends, he was forced to flee in 2001 after neighbors attacked and threatened him for being bisexual.  He entered the United States using a visa issued in another name and was later detained and placed in removal proceedings.  Mohamed, proceeding *pro se*, reported at a preliminary hearing that "gang members" in Guyana had "caught" him with another man, "jumped" him, and told him that if he did not leave Guyana, they would "burn [his] house down with [him] inside."  JA 67–68.  He then submitted a written application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT),[1] in which he further reported that he was "constantly abused and beaten [i]n [his] home town" and "constantly threaten[ed]," including one instance in which he had been "beaten so bad [he] almost died."  JA 47.

---

[1] To qualify for asylum, Mohamed was required to apply within one year of arriving in the United States, 8 U.S.C. § 1158(a)(2)(B), and demonstrate a "well-founded fear" of persecution in Guyana "on account of [his] … membership in a particular social group," 8 U.S.C. § 1101(a)(42)(A).  Asylum applications also constitute simultaneous applications for mandatory withholding of removal, 8 C.F.R. § 208.3(b), which does not impose a one-year filing deadline but does require a higher burden—a "clear probability" of persecution—to merit protection.  *Kaita v. Att'y Gen.*, 522 F.3d 288, 296 (3d Cir. 2008) (internal quotation marks omitted).  Finally, to qualify for CAT protection, Mohamed was required to show that "it is more likely than not that he . . . would be tortured," *id.* at 300 (internal quotation marks omitted), "with the consent or acquiescence of a public official" if returned to Guyana, *id.* (quoting 8 C.F.R. § 208.18(a)(1)).

At an individual hearing, the Immigration Judge (IJ) instructed Mohamed: "[T]his is your opportunity to talk to me and tell me everything you want me to know about why you should be granted your claim for the protection based on your fear of being persecuted or tortured if you go back to Guyana." JA 120–21. Mohamed gave a short statement, again reporting that he left Guyana because after he "got caught … having sex" with another man, that the man's "family … tried to hurt [him]," and that "[t]he Muslim community … told [him] to leave." JA 121. The IJ asked no follow-up questions, but later issued an oral decision denying Mohamed's applications and ordering his removal to Guyana. She specifically held that Mohamed's application for asylum was untimely filed and he "failed to establish any extraordinary circumstance for delay," JA 35; that Mohamed failed to establish he was the victim of past persecution, which would have "trigger[ed] a rebuttable presumption of a well-founded fear of future persecution," *Lukwago v. Ashcroft*, 329 F.3d 157, 174 (3d Cir. 2003) (citing 8 C.F.R. § 208.13(b)(1)), because he reported only a "single incident of a bad beating" and "no evidence that he required significant medical attention," JA 36; and that Mohamed did not show the Guyanese government would consent or acquiesce in any future attacks.

Mohamed appealed to the Board of Immigration Appeals (BIA), which held that the IJ correctly denied asylum as untimely and correctly concluded that Mohamed did not demonstrate injuries severe enough to support a finding of past persecution. However, the BIA said it was nevertheless "unable to determine" from the record whether Mohamed was likely to be subject to future persecution, so it remanded for the IJ "to

4

conduct further fact-finding and legal analysis" and directed the IJ to "clarify her credibility finding." JA 13. On remand, the case was reassigned to a different IJ, who, without eliciting any additional testimony from Mohamed, issued a decision finding Mohamed to be "partially credible" on the ground that the testimony he had given at the individual hearing before the original IJ was "somewhat unclear and inconsistent." JA 18.

Mohamed again appealed to the BIA, this time raising additional arguments that the IJs violated his due process rights by failing to develop the record, that the credibility finding was erroneous, and that Mohamed's illiteracy presented a circumstance justifying his delay in filing for asylum. AR 680-90. The BIA issued a 1.5–page opinion again affirming the removal order and holding that there was no due process violation because the IJ "adequately explained the hearing," that Mohamed failed to meet his burden of demonstrating a likelihood of persecution "even if he testified credibly," and that it need not "revisit" its earlier review of the timeliness question. JA 7–8. With the assistance of *pro bono* counsel,[2] Mohamed filed a timely motion to reopen removal proceedings, to which he attached a detailed and sworn affidavit providing more details about attacks he suffered in Guyana and his fear of return. The BIA again wrote a 1.5-page opinion denying the motion, holding that Mohamed failed to show that the new evidence sought

---

[2] We express our gratitude to Petitioner's *pro bono* counsel, Messrs. Elgarten, Kellet, Levine, and Mesropyan of Crowell & Moring for their excellent briefing and argument in this case. Lawyers who act *pro bono* fulfill the highest service that members of the bar can offer to indigent parties and to the legal profession.

to be submitted would "alter the outcome of this case." JA 2. These timely petitions for review followed and were consolidated before this Court.

## II. Discussion

Mohamed now argues that the BIA wrongly concluded he failed to demonstrate past persecution in Guyana, that the BIA should have excused his failure to file for asylum within one year of entry, and that the IJs failed to provide him with procedural due process. In the alternative, he argues that the BIA erred in its analysis of the evidence he submitted in support of his motion to reopen proceedings. The Government counters that jurisdiction is lacking here. We agree that we do not have jurisdiction to consider Mohamed's first two arguments. We therefore begin with a discussion of our jurisdiction over these claims, before moving on to address the merits of Mohamed's arguments as to due process and the motion to reopen.

### A. Jurisdiction

The BIA had authority to review Mohamed's appeals and motion to reopen under 8 C.F.R. § 1003.1(b)(3) and § 1003.2(c). We generally have jurisdiction over petitions for review of BIA orders under 8 U.S.C. § 1252(a), but this statute also contains several jurisdiction-stripping provisions that prevent us from reviewing Mohamed's arguments as to the sufficiency of the evidence and the timeliness of his asylum application.

First, Mohamed argues he provided "testimony and submissions … sufficient to establish past persecution and raise a presumption of future persecution," and given that the government never rebutted that presumption, the BIA should have concluded the

6

"evidence adduced in his hearings was sufficient to establish his claim for withholding of removal." Pet'r's Br. 31. However, because Mohamed was charged as removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) for being convicted of a crime involving moral turpitude, the statute withdraws our jurisdiction to review the removal order unless his petition presents constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(C); § 1252(a)(2)(D). Mohamed asserts he is challenging the IJ's application of a legal standard, and thus presenting an issue preserved for our review, but this argument essentially asks us to review the sufficiency of the disputed evidence he produced in support of his application and conclude that he met his burden of demonstrating past persecution. *See Patel v. Att'y Gen.*, 619 F.3d 230, 233 (3d Cir. 2010). We are without jurisdiction to make this factual assessment. *See id.; Green v. Att'y Gen.*, 694 F.3d 503, 507 (3d Cir. 2012); *Alaka v. Att'y Gen.* 456 F.3d 88, 103 (3d Cir. 2006).

Second, Mohamed argues that the BIA erred in affirming the IJ's conclusion that he was ineligible for asylum on the basis of his untimely filing and urges us to remand for consideration of whether his illiteracy presents a sufficient circumstance justifying the delay. However, we do not have jurisdiction to consider an issue that was not exhausted before the agency. *Lin v. Att'y Gen.*, 543 F.3d 114, 120 (3d Cir. 2008). Mohamed indicated on his written application for asylum that he would "explain in person" why he was applying more than one year after entry, JA 50, but he did not do so at his hearing, nor did he challenge the IJ's timeliness analysis on his first appeal. Even if we were to regard Mohamed's mention of the issue on his second appeal as sufficiently presenting

7

the issue for review—despite the BIA's conclusion that it was waived—our review of this issue is likewise limited to constitutional claims or questions of law. 8 U.S.C. § 1158(a)(3); *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006). Mohamed again casts his argument as a legal one by pointing out that the BIA's observation in its first opinion that he "did not claim any *exceptional* circumstances for his delay in filing," JA 12 (emphasis added), appears to impose a higher standard than the "extraordinary" one required by statute. *Compare* 8 U.S.C. § 1229a(e)(1), *with* 8 U.S.C. § 1158(a)(2)(D), and 8 C.F.R. § 208.4(a)(5). However, given that the BIA both stated the correct "extraordinary" standard earlier in its opinion and relied on the IJ's opinion applying the correct standard, and given that Mohamed provided no evidence to the IJ or BIA capable of satisfying either standard, this claim lacks merit. *See Voci v. Gonzales,* 409 F.3d 607, 612 (3d Cir. 2005); *Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007). Any reference to the wrong standard is therefore harmless, *see Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011), and remand is unnecessary, *see NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

We conclude, however, that we have jurisdiction over Mohamed's remaining arguments, and we will proceed to address our jurisdiction and the merits of these claims below.

B. *Due Process*

Mohamed petitions for review of his removal order on the basis that the IJ violated his due process rights by failing to question him and "develop [his] testimony with

8

respect to any facts that might be dispositive of his claims." Pet'r's Br. 39. We have jurisdiction to consider such a constitutional claim, 8 U.S.C. § 1252(a)(2)(D), and our review is plenary, *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595–96 (3d Cir. 2003), but we nevertheless conclude that Mohamed is not entitled to the relief he seeks.

The Fifth Amendment guarantees applicants who are seeking to forestall or terminate removal proceedings an "opportunity to be heard at a meaningful time and in a meaningful manner." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). We have recognized that this right may be violated when an IJ has deprived a petitioner of the opportunity to make arguments on his behalf through obstructive behavior or intimidation, *see Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 221–25 (3d Cir. 2017) (discussing cases), and, conversely, that it generally is not violated when an IJ has "not obstruct[ed] or denigrate[ed] [the petitioner's] testimony" and "interjected only to allow [the petitioner] to clarify inconsistent responses or to give him the opportunity to respond in further detail," *Abdulrahman*, 330 F.3d at 497.

This case presents a close question. Although the Government now points to testimony Mohamed provided at preliminary hearings as proof that he was afforded ample opportunity to testify, we find that argument troubling given that the IJ responded to Mohamed's attempts to provide details of his fear of persecution at those hearings by cutting him off with comments like: "Look, sir, I'm not hearing your claim today. This is not the day for me to hear the details of your fear in going back, sir. I'm going to set a

9

hearing date for you to provide those details …. But this is not that day." JA 94. In addition, after the BIA remanded for the explicit purpose of "clarify[ing] [the] credibility finding" and conducting "further fact-finding" regarding discrimination in Guyana, JA 13, the second IJ—without taking additional testimony or evidence or conducting a hearing at which he could observe Mohamed to make meaningful credibility findings— issued his opinion that included a finding that Mohamed was only "partially credible" at his original hearing before a different IJ, JA 18. The BIA later glossed over this error by assuming Mohamed's credibility, even though the Board itself thought credibility findings sufficiently important that it had remanded specifically for clarification on that point.

As we have noted, it is difficult for the Board and our Court to evaluate whether an IJ's findings are adequately supported by the evidence if the IJ does not elicit on the record those facts upon which she relies. *See Senathirajah v. I.N.S.*, 157 F.3d 210, 220 (3d Cir. 1998). And as the BIA itself has observed, "full examination of an applicant [is] an essential aspect of the asylum adjudication process for reasons related to fairness to the parties and to the integrity of the asylum process itself." *Matter of Fefe*, 20 I & N Dec. 116, 118 (BIA 1989); *see also In re S-M-J-*, 21 I. & N. Dec. 722, 723–26 (BIA 1997). The importance of that full examination is all the more apparent when considering the difficulties faced by a *pro se* applicant with little or no reading skills who was forced to seek help from his fellow detainees in a facility where he had already been

10

assaulted, collect evidence and seek testimony while detained, and present his case via videoconference.

Disturbing as we find the circumstances here, however, we cannot say, considering the proceedings as a whole, that they are "sufficiently egregious" to conclude Mohamed's procedural due process rights were violated. *Serrano-Alberto*, 859 F.3d at 223. In reaching this conclusion, we note that the IJ assisted Mohamed in ascertaining whether he may be eligible for any forms of relief and then provided him with an unimpeded opportunity to present supporting evidence at an individual hearing, and that Mohamed declined to provide further evidence when answering the Government's questions during that hearing. No doubt there are other steps the IJ could have taken to develop the record more fully, mitigating concerns about the extent of process afforded to Mohamed and facilitating review by both the BIA and this Court, but we have not held that an IJ is constitutionally obligated to affirmatively assist a litigant in developing the record, *Serrano-Alberto*, 859 F.3d at 224 n.8. Moreover, given our disposition of Mohamed's motion to reopen, to which we now turn, the BIA will have the opportunity to ensure that Mohamed receives the full examination and fair process to which he is entitled on remand.

For all of these reasons, we will deny Mohamed's petition for review of the order of removal.

11

*C. Motion to Reopen*

In the alternative, Mohamed argues that the BIA erred in failing to meaningfully consider the evidence he submitted in support of his motion to reopen proceedings and incorrectly concluded the evidence was not sufficiently "material." Pt'r's Br. 51. Given the BIA's conclusory review of the motion and evidence submitted in support thereof, we will remand to allow the BIA to conduct a more thorough review and to better articulate its legal conclusions.

A motion to reopen will only be granted if "it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing," 8 C.F.R. § 1003.2(c)(1); *see also* 8 U.S.C. § 1229a(c)(7), and we review a denial of such a motion under a deferential abuse-of-discretion standard, *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992). The BIA's stated basis for denying the motion in this case was that Mohamed's "statement and new evidence submitted in support of reopening would not alter the outcome of this case" because this information was already "reflected in the Immigration Judge's decision." JA 2–3. As with the challenges to the removal order discussed above, we "lack jurisdiction to review a denial of a motion to reopen, except to the extent that it raises constitutional claims or questions of law," *Cruz v. Att'y Gen.*, 452 F.3d 240, 247 (3d Cir. 2006), but whether the "evidence sought to be offered is material," 8 C.F.R. § 1003.2(c)(1), is a mixed question of law and fact, and we therefore retain jurisdiction to review Mohamed's challenge to the legal standard of materiality applied by the Board, *see Myrie v. Att'y Gen.*, 855 F.3d

12

509, 516 (3d Cir. 2017); *Yusupov v. Att'y Gen.*, 650 F.3d 968, 979 (3d Cir. 2011); *Kamara v. Att'y Gen.*, 420 F.3d 202, 211, 213 (3d Cir. 2005).

On the merits, however, the BIA's cursory opinion "frustrates our ability to reach any conclusion on this issue." *Cruz*, 452 F.3d at 248. The BIA has "a duty to explicitly consider any … evidence submitted by an applicant that materially bears on his claim," *Zheng v. Att'y Gen.*, 549 F.3d 260, 268 (3d Cir. 2008), and it "must provide an indication that it considered such evidence, and if the evidence is rejected, an explanation as to why it was rejected," *Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014); *see also Shardar v. Att'y Gen.*, 503 F.3d 308, 315 (3d Cir. 2007). Here, the BIA has not sufficiently articulated the facts it considered or its reasoning for reaching the conclusion that such facts "would not alter the outcome of this case." JA 2. The BIA's opinion describes the submission as presenting "new evidence" and yet fails to recognize that the affidavit describes many new events and details that were not presented to the IJ and therefore could not be "reflected in the Immigration Judge's decision." JA 2-3. Specifically, in addition to describing the incident where Mohamed was beaten after being caught with another man, which he mentioned at his removal hearing, the affidavit describes an event that occurred two nights later in which he was again beaten and threatened, as well as an event in which a group Mohamed describes as the "Phantom Squad," "a gang of off-duty and former police officers that engage in vigilante justice," by "beat[ing] and even kill[ing] bisexual and homosexual people," attacked him and threatened to kill him. JA 59. He avers that these attacks resulted in injuries—some of which are visible and thus

13

verifiable—like scars, broken bones, and memory problems, and he provided more details about his fear of reporting the events to the police in Guyana and his involvement in the gay community since moving to the United States. These details concern facts essential to the claim that the IJ previously said were lacking, like the extent of his past persecution, the severity of his injuries, the involvement of official authorities, and his identity as a "Muslim bisexual." JA 39. The BIA opinion does not meaningfully engage with the question of whether the additional testimony about these details would lead an IJ to conclude that Mohamed is likely to be subjected to persecution or torture, and therefore the Board's conclusory review of this issue was an abuse of discretion. *See Shardar*, 503 F.3d at 315–16.

Given our uncertainty about the BIA's analysis, "[w]e must give the BIA the opportunity to clarify its opinion." *Cruz*, 452 F.3d at 248; *see also Pareja v. Att'y Gen.*, 615 F.3d 180, 196–97 (3d Cir. 2010). We therefore remand for the BIA, in light of the above-referenced concerns, to provide a more complete review of the motion to reopen and to reconsider whether to exercise is discretion to reopen the proceedings.

## III. Conclusion

For the foregoing reasons, we will deny the petition for review of the order of removal, but grant the petition for review of the order denying the motion to reopen and remand to the BIA for proceedings consistent with this opinion.

14